Nos. 21–3207 & 21-3280

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

### DEATH PENALTY CASE

| | | |
|---|---|---|
| NATHANIEL JACKSON, | : | On Appeal from the |
|     Appellee/Cross-Appellant, | : | United States District Court |
| | : | for the Northern District of Ohio |
| v. | : | Eastern Division |
| | : | |
| TIM SHOOP, WARDEN, | : | |
|     Appellant/Cross-Appellee. | : | District Court Case No. |
| | : | 4:07–cv-0880 |
| | : | |
| | : | |
| | : | |

---

### OPENING BRIEF OF APPELLANT WARDEN

---

DAVE YOST
Ohio Attorney General

BENJAMIN M. FLOWERS*
Ohio Solicitor General
  *Counsel of Record
DIANE R. BREY
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614–466–8980
bflowers@ohioattorneygeneral.gov

*Counsel for Appellant Warden*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................ii

STATEMENT REGARDING ORAL ARGUMENT ...........................................v

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF THE ISSUES ........................................................2

INTRODUCTION ...................................................................3

STATEMENT OF THE CASE .........................................................5

SUMMARY OF ARGUMENT.........................................................13

STANDARD OF REVIEW ..........................................................18

ARGUMENT.....................................................................18

    I.    Jackson's Eighth Amendment claim does not entitle him to relief under the demanding standards applicable under AEDPA. ...................18

       A.    AEDPA imposes a nearly insurmountable bar to habeas relief...........18

       B.    Jackson is not entitled to habeas relief under AEDPA's demanding standards. ...................................................20

    II.    The District Court erred in ruling for Jackson......................30

CONCLUSION...................................................................34

CERTIFICATE OF COMPLIANCE .................................................35

CERTIFICATE OF SERVICE .......................................................36

DESIGNATION OF DISTRICT COURT RECORD.........................................37

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Cullen v. Pinholster*,
   563 U.S. 170 (2011) ..................................................................20

*Davis v. Coyle*,
   475 F.3d 761 (6th Cir. 2007)......................................................*passim*

*Early v. Packer*,
   537 U.S. 3 (2002) ......................................................................19

*Eddings v. Oklahoma*,
   455 U.S. 104 (1982)....................................................................*passim*

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018) ...............................................................29

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
   537 F.3d 667 (D.C. Cir. 2008) ....................................................29

*Harrington v. Richter*,
   562 U.S. 86 (2011) .....................................................................*passim*

*James v. Brigano*,
   470 F.3d 636 (6th Cir. 2006) .......................................................18

*Lockett v. Ohio*,
   438 U.S. 586 (1978)....................................................................*passim*

*Mays v. Hines*,
   141 S. Ct. 1145 (2021).................................................................20

*Montgomery v. Bobby*,
   654 F.3d 668 (6th Cir. 2011) (*en banc*) .......................................18

*Preterm-Cleveland v. McCloud*,
   994 F.3d 512, 2021 U.S. App. LEXIS 10520 (6th Cir. 2021) (*en banc*) ................................................................................29

*Renico v. Lett,*
    559 U.S. 766 (2010)..................................................................16, 20, 27

*Skipper v. South Carolina,*
    476 U.S. 1 (1986).............................................................................*passim*

*State v. Berget,*
    853 N.W.2d 45 (S.D. 2014) ........................................................ 15, 30

*State v. Davis,*
    38 Ohio St. 3d 361 (1988) ................................................................ 31

*State v. Jackson,*
    107 Ohio St. 3d 300 (2006) ........................................................ 6, 7, 8

*State v. Jackson,*
    149 Ohio St. 3d 55 (2016) ...........................................................*passim*

*State v. Jackson,*
    190 Ohio App. 3d 319 (Ohio Ct. App. 2010)......................................8

*State v. Roberts,*
    137 Ohio St. 3d 230 (2013) ..............................................................28

*Walton v. Arizona,*
    497 U.S. 639 (1990).........................................................................29

*White v. Woodall,*
    572 U.S. 415 (2014).........................................................................16

*Williams v. Taylor,*
    529 U.S. 362 (2000)...................................................................*passim*

*Woodford v. Visciotti,*
    537 U.S. 19 (2002) .................................................................... 19, 20

*Woods v. Donald,*
    575 U.S. 312 (2015) ............................................................ 3, 13, 19

## Statutes and Constitutional Provisions

U.S. Const., Am. 8................................................................................29

28 U.S.C. §1291 ........................................................................... 1

28 U.S.C. §1331 ........................................................................... 1

28 U.S.C. §2241 ........................................................................... 1

28 U.S.C. §2253 ........................................................................... 1

28 U.S.C. §2254 ................................................................... *passim*

Ohio Rev. Code §2929.05 ........................................................ 28

## STATEMENT REGARDING ORAL ARGUMENT

Because this case presents important constitutional and statutory issues, the Warden believes oral argument would assist the Court in resolving the case. The Warden therefore requests oral argument.

## JURISDICTIONAL STATEMENT

Appellee Nathaniel Jackson, who is in custody pursuant to a state-court judgment, filed his petition for a writ of habeas corpus under 28 U.S.C. §2254. The United States District Court for the Northern District of Ohio had jurisdiction under 28 U.S.C. §§1331, 2241(d), and 2254(a). That court entered its judgment against the Warden—the respondent in the proceedings below—granting a conditional writ of habeas corpus on February 23, 2021.

On March 2, 2021, the Warden, timely appealed from the District Court's February 23, 2021 final judgment granting habeas relief to Jackson. (Tim Shoop has replaced Marc Houk as warden. The caption in this appeal reflects that change.) This Court has appellate jurisdiction over the Warden's appeal pursuant to 28 U.S.C. §1291 and §2253(a). (The District Court granted a certificate of appealability solely as to Ground 30 of Jackson's habeas petition, which is the only basis on which the District Court granted habeas relief. *See* COA, R.88, Page-ID#23898. This Court later granted a certificate of appealability on eight additional claims: claim 27, asserting ineffective assistance of counsel at the mitigation stage, and claims 19, 20, 22, 25, 26, 28, and 32, alleging judicial bias. *See* Doc. 20-1, at pp. 3–5.)

## STATEMENT OF THE ISSUES

In *Lockett v. Ohio*, 438 U.S. 586 (1978), and *Skipper v. South Carolina*, 476 U.S. 1 (1986), the Supreme Court held that capital defendants have a right to introduce mitigating evidence during sentencing.  But no Supreme Court case has ever considered the following question:  Does the Constitution guarantee capital defendants a right to introduce *new* mitigating evidence in a resentencing hearing held to correct an error that occurred *after* they had a full and unlimited opportunity to present mitigating evidence?

The Supreme Court of Ohio, in petitioner Nathaniel Jackson's case, held that the answer is "no."  Jackson now seeks habeas relief under 28 U.S.C. §2254(d)(1).  To win relief, he must show that the Ohio Supreme Court's decision was either "contrary to, or involved an unreasonable application of," Supreme Court precedent.  28 U.S.C. §2254(d)(1).  To satisfy that standard, Jackson must show that the Ohio Supreme Court's application of some holding from the U.S. Supreme Court was wrong "beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  This case therefore presents the following question:  Did the Ohio Supreme Court, in answering a question that the U.S. Supreme Court has never considered, apply U.S. Supreme Court precedent in a manner that was wrong beyond any possibility for fairminded disagreement?

# INTRODUCTION

This is a case about the federal courts' power to award habeas relief. By statute, that power is very limited. And for good reason. Federal habeas review "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (quotation omitted). To limit the degree of interference, Congress passed the Antiterrorism and Effective Death Penalty Act, more commonly known as "AEDPA." AEDPA empowers federal courts to award habeas relief to state habeas petitioners in only limited circumstances. Relevant here, courts may award relief to a petitioner who is in custody because of a state-court ruling that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). In this context, "clearly established Federal law" includes "only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (*per curiam*) (quotation omitted). And a petitioner can win relief only by showing that the state court's decision either squarely contradicted such a holding, or else misapplied the holding so egregiously

that the court was wrong "beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

This case presents the question whether the Ohio Supreme Court committed such an error. Several cases have held that capital defendants, like Jackson, must be allowed to introduce mitigating evidence. *See, e.g.*, *Lockett v. Ohio*, 438 U.S. 586 (1978) and *Skipper v. South Carolina*, 476 U.S. 1 (1986). Jackson was allowed to, and in fact did, introduce mitigating evidence at his original hearing. But following a remand to correct a procedural error in his sentencing—an error that post-dated, and that had nothing to do with, Jackson's opportunity to present mitigating evidence—the state trial court declined to let Jackson introduce additional mitigating evidence. The Supreme Court of Ohio held that the Constitution gave Jackson no right to introduce such evidence. It reasoned that, while the *Lockett-Skipper* line of cases entitles capital defendants to introduce mitigating evidence at the penalty phase, no Supreme Court holding gives capital defendants a right to introduce *new* mitigating evidence on remand to correct a procedural error unrelated to the opportunity to present mitigating evidence. This case presents the question whether the Supreme Court of Ohio contradicted, or unreasonably applied, Supreme Court precedent.

4

The answer is "no."  The state court's application of the *Lockett-Skipper* principle does not contradict any Supreme Court holding.  Nor does it apply any holding in a manner that is wrong beyond fairminded debate—there is ample room for reasonable debate regarding whether *Lockett* and *Skipper* entitle a capital defendant who *already* introduced mitigating evidence to introduce still more mitigating evidence following a remand for the correction of errors unrelated to the presentation of mitigation evidence.  It follows that the Supreme Court of Ohio's ruling was not so egregiously wrong as to justify relief under §2254(d)(1).  The District Court held otherwise, mistakenly relying on this Court's distinguishable decision in *Davis v. Coyle*, 475 F.3d 761 (6th Cir. 2007).  But it erred, and this Court should reverse its judgment.

## STATEMENT OF THE CASE

**1.**  On December 11, 2001, someone shot and killed Robert Fingerhut in the home that he shared with his former wife, Donna Roberts.  *State v. Jackson*, 149 Ohio St. 3d 55, 56–57 (2016).  Police searched the home and found 145 handwritten letters and cards that Roberts received from a man named Nathaniel Jackson.  The communication ran in both directions:  in Roberts's car, police found a bag with Jackson's name on it containing, among other things, 139 letters that Roberts sent to Jackson.  *Id.* at 57.

As it turned out, Roberts had been having an affair with Jackson.  The affair was interrupted when Jackson, in 2001, served a prison term at Lorain Correctional Institution.  *Id.* at 56; *see also State v. Jackson*, 107 Ohio St. 3d 300 (2006).  But while serving his time, Jackson communicated with Roberts, hatching a plan to kill Fingerhut.  *Jackson*, 149 Ohio St. 3d at 56–57.  Just days after Jackson's release, he and Roberts acted on that plan.  Jackson entered Fingerhut's home, shot him, and fled.  Roberts, for her part, called the police to report that she had found the body of her ex-husband at their home.  She also reported Fingerhut's car stolen.  *Id.* at 57; *see also Jackson*, 107 Ohio St. 3d at 301.

Police apprehended Jackson ten days after the murder.  He claimed the killing was in self-defense.  *Jackson*, 149 Ohio St. 3d at 57.  On Jackson's telling, Fingerhut made some disparaging remarks toward him and pulled out a gun.  Jackson said that Fingerhut fired when Jackson reached for the gun, shooting Jackson's finger.  Jackson claimed that he was nonetheless able to wrest the gun from Fingerhut's grip.  At that point, Jackson claimed, he shot Fingerhut twice, stole the car, and left.  *Id.*

The State indicted Jackson on two counts of aggravated murder.  Each count carried two death-penalty specifications.  The State also indicted Jackson on separate counts of aggravated burglary and aggravated robbery, adding a firearm specifi-

cation for each count. *Id.* at 58. (The State charged Roberts with aggravated murder, too. *See id.* at 58–59.)

**2.** The jury at Jackson's trial found him guilty on all counts. *Id.* at 58; *Jackson*, 107 Ohio St. 3d at 307. The case then moved to the penalty phase. There, Jackson presented evidence in mitigation. *See Jackson* 149 Ohio St. 3d at 70; *Jackson*, 107 Ohio St. 3d at 322–23. For example, Jackson presented testimony from a psychologist, who told the jury that Jackson "does have the ability to get along with other people and has done well in the structured environment of prison," and that "he would function best in a prison environment." *Jackson*, 107 Ohio St. 3d at 323; *see also* State Ct. Tr., R.49–9, PageID#23156, 23205. Jackson also gave an unsworn statement and presented evidence concerning his difficult upbringing. 149 Ohio St. 3d at 87–88. The evidence apparently did not move the jury: it recommended a death sentence. The evidence apparently did not move the court, either: the presiding judge accepted the jury's recommendation and sentenced Jackson to death. *Id.* at 58; *see also* State Ct. Tr., R.49–9, PageID#23283. (The same court later sentenced Roberts to death, as well. 149 Ohio St. 3d at 58.)

The Supreme Court of Ohio affirmed Jackson's conviction and sentence on direct appeal. *Jackson*, 107 Ohio St. 3d at 325. The court independently weighed the aggravating and mitigating circumstances, as Ohio law requires. *Id.* at 324–25.

The court specifically noted that "Jackson's history, character, and background offer[ed] some mitigating features," such as the rough neighborhood he grew up in and his drug dependency, which was related to his involvement in crime, mostly burglaries. *Id.* at 324. Further, the court found that "Jackson's ADHD and antisocial personality disorder deserve[d] some weight in mitigation," as did "his ability to overcome his ADHD and [his] adaption to the structured setting of prison." *Id.* The court nonetheless concluded—unanimously—that the aggravating circumstances outweighed the mitigating circumstances beyond a reasonable doubt. *Id.* at 325. It thus declined to upset Jackson's capital sentence.

**3.** At some point later, Jackson learned that the trial judge had used an assistant prosecutor to help him draft the capital sentencing opinion. On this basis, Jackson moved for a new trial. The trial court denied the motion, but the Ohio Court of Appeals reversed, vacating the death sentence and remanding to the trial court to evaluate the appropriateness of a death sentence and prepare a new sentencing opinion. *State v. Jackson*, 190 Ohio App. 3d 319, 320, 323, 326 (Ohio Ct. App. 2010).

The trial court, on remand, held a resentencing hearing. *Jackson*, 149 Ohio St. 3d at 56, 61. There, the prosecutor made no argument for the death penalty, resting instead on the record as it stood. *See id.* at 69; *see also* Tr. Ct. Supp. App'x,

8

R.47–17. PageID#13525–54 (transcript of resentencing hearing). Jackson, however, proffered additional mitigating evidence. More specifically, Jackson came forward with more evidence about his upbringing, his school records, his criminal and probation records, and a 2002 psychological report prepared by the same psychologist who testified at his original 2002 mitigation hearing. *Jackson* 149 Ohio St. 3d at 66, 69-70; *see also* Tr. Ct. Supp. App'x, R.47–14, 47–15, 47–16, 47–17, PageID#12619–13472. The trial court declined to admit this evidence. *See* Tr. Ct. Supp. App'x, R.47–17, PageID#13528–31, 13538. But before the trial court imposed the sentence, Jackson made a statement describing his good record of behavior while on death row. *Jackson* 149 Ohio St. 3d at 69; *see also* Tr. Ct. Supp. App'x, R.47–17, Page-ID#13545–46.

The trial court again sentenced Jackson to death. Its resentencing entry indicated that it had "considered the record," Jackson's "oral statements," and the "principles and purposes of sentencing." Ohio Supreme Ct. Supp. App'x, R.48–7, PageID#15276–78; *see also* Tr. Ct. Supp. App'x, R.47–17, PageID#13546. Based on all that, it once again determined that it would be appropriate to sentence Jackson to death.

Jackson again appealed his death sentence to the Supreme Court of Ohio. Relevant here, he argued that the trial court violated the U.S. Constitution by refus-

ing to let him present additional mitigating evidence at his resentencing hearing. The Supreme Court of Ohio disagreed. It acknowledged that, in a series of cases, the U.S. Supreme Court held that the Eighth Amendment entitles capital defendants to introduce mitigation evidence at sentencing. *Jackson*, 149 Ohio St. 3d at 66–67 (citing *Lockett v. Ohio*, 438 U.S. 586, 604 (1978), *Eddings v. Oklahoma*, 455 U.S. 104, 113–14 (1982), and *Skipper v. South Carolina*, 476 U.S. 1, 4–5 (1986)). None of those cases, however, addressed whether a defendant who was allowed to present "all the mitigation evidence he desired" at his initial sentencing had "a categorical constitutional right to introduce new mitigation evidence" when being *resentenced* following a remand for correction of an error unrelated to mitigation evidence. 149 Ohio 3d. at 67. Thus, none of those cases gave Jackson a right to present new mitigation evidence after the Ohio Court of Appeals remanded for a limited resentencing hearing based on the trial court's improper use of a prosecutor in drafting the opinion. The Ohio Supreme Court went on to hold that the Eighth Amendment confers no such right. It explained: "To hold … that a new mitigation hearing must be held, even though no constitutional error infected the original one, would transform the right to present relevant mitigation into a right to *update* one's mitigation." 149 Ohio St. 3d at 69 (quoting *State v. Roberts*, 137 Ohio St. 3d 230, 237 (2013) (emphasis in original)).

In reaching this conclusion, the Ohio Supreme Court addressed this Court's decision in *Davis v. Coyle*, 475 F.3d 761 (6th Cir. 2007).  *Davis*, an AEDPA case, held that *Lockett* and *Skipper* clearly established a right to introduce new mitigating evidence during resentencing in at least some situations.  The Ohio Supreme Court rejected *Davis* because, as just discussed, it did not think *Davis* correctly interpreted Supreme Court precedent.  Since state courts are not "bound by rulings on federal statutory or constitutional law made by a federal court other than the United States Supreme Court," the Ohio Supreme Court saw no reason to make the same mistake that *Davis* had.  149 Ohio St. 3d at 68 (quotation omitted).

For good measure, the Ohio Supreme Court also distinguished *Davis* on its facts.  *Id.* at 69–70.  In *Davis*, the prosecutor, during resentencing, made new arguments in support of imposing a death sentence.  475 F.3d at 772–73.  The mitigation evidence the defendant wished to introduce would have responded to those new arguments, making it "highly relevant."  *Id.* at 773.  The Supreme Court of Ohio contrasted those facts to the facts in Jackson's case, where the prosecutor "made no argument in favor of the death penalty" during resentencing, leaving Jackson with "no arguments to rebut."  *Jackson*, 149 Ohio St. 3d at 69.  What is more, Jackson (unlike the defendant in *Davis*) did not proffer any other evidence (apart from his own statement) pertaining to his behavior in prison after his murder conviction; in-

stead, he proffered evidence that would only have bolstered mitigation arguments he already raised at his initial sentencing. *Id.* at 69. The Ohio Supreme Court thus concluded that, even if *Davis* were right that a defendant may raise *new* mitigation evidence in response to *new* arguments during resentencing, the Eighth Amendment gave Jackson no right to present, in response to no argument at all, mitigation evidence that could have been presented in his original sentencing hearing.

**4.** Jackson next turned to federal court, where he petitioned for a writ of habeas corpus. His petition raised dozens of claims for relief. Just one is relevant here: Jackson argued that the state trial court erred by refusing to allow him to reopen his mitigation case at resentencing. *See* Op. & Order, R.80, PageID#23849. The District Court agreed with Jackson on this claim only. *Id.*, PageID#23849–54. The Court, after reciting the rule in *Lockett*, *Eddings*, and *Skipper*, concluded that this Court's interpretation of those cases in *Davis v. Coyle* was correct and, in any event, binding. *Id.*, PageID#23850–53. *Davis*, the court reasoned, awarded habeas relief to a capital defendant who was not allowed to reopen his mitigation case during a resentencing. Because Jackson was a capital defendant not allowed to reopen his mitigation case during a resentencing, the District Court reasoned, *Davis* entitled him to habeas relief. The court did not consider—at least, it did not expressly

consider—whether the factual differences between Jackson's case and *Davis* required a different outcome.

**5.** The Warden timely appealed, and this Court stayed the lower court's judgment pending appeal.

## SUMMARY OF ARGUMENT

**I.** Jackson is not entitled to habeas relief under AEDPA. To win relief, he must show that the Supreme Court of Ohio's decision rejecting his *Lockett-Skipper* claim was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). This difficult-to-satisfy standard is very deferential to state courts. AEDPA's use of "clearly established Federal law" refers only to Supreme Court holdings—Supreme Court *dicta* and circuit-level precedents do not count. *See Woods v. Donald*, 575 U.S. 312, 316 (2015) (*per curiam*). A state-court decision is "contrary to" a Supreme Court holding in only two circumstances. *First*, if "the state court applies a rule that contradicts the governing law set forth in" U.S. Supreme Court "cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). *Second*, if "the state court confronts a set of facts that are materially indistinguishable from a decision of" the Supreme Court "and nevertheless arrives at a result different from "the Supreme Court's "precedent." *Id.* at 406. A state-court decision qualifies as

"an unreasonable application of" a Supreme Court holding only if it is so wrong that its error was "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Here, the relevant Supreme Court holdings come from *Lockett v. Ohio*, 438 U.S. 586 (1978), *Eddings v. Oklahoma*, 455 U.S. 104 (1982), and *Skipper v. South Carolina*, 476 U.S. 1 (1986). Those cases stand for the proposition that "the sentencer" in a capital case must "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Skipper*, 476 U.S. at 4 (quoting *Eddings*, 455 U.S. at 110). None of the cases, however, addressed the precise question at issue in *Jackson*'s case: Do capital defendants have a "constitutional right to introduce new mitigation evidence that is discovered after a sentencing hearing in which the defendant was given an opportunity to present all the mitigation evidence he desired"? *State v. Jackson*, 149 Ohio St. 3d 55, 67 (2016). Remember, Jackson had a full and fair opportunity to present mitigation evidence at his original sentencing hearing. His habeas petition rests on the claim that he was entitled to produce *additional* mitigating evidence following a remand to correct a procedural flaw that, while it occurred at sentencing, occurred

*after* the presentation of mitigation evidence and had nothing to do with the opportunity to present mitigating evidence. The Ohio Supreme Court saw no constitutional flaw, *id.*, and the question is whether that ruling amounted to an error under the heavily deferential standard set out in §2254(d)(1).

The answer is "no." Beginning with the "contrary to" prong, no Supreme Court case presents "facts that are materially indistinguishable" from this case. *Williams*, 529 U.S. at 406. Nor did the Ohio Supreme Court "appl[y] a rule that contradicts the governing law set forth in [the Supreme Court's] cases." *Id.* at 405. To the contrary, the Supreme Court of Ohio expressly recognized the rule set out in the *Lockett-Skipper* line of cases, but held (correctly) that none of those cases addressed a circumstance in which the defendant already had a full and fair opportunity to present mitigating evidence. *Jackson*, 149 Ohio St. 3d at 67.

That leaves only the "unreasonable application" prong. And Jackson cannot satisfy that one either. The Supreme Court of Ohio's decision was not "so lacking in justification" that the Court committed error "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. For one thing, the distinction the court drew between Jackson's case and the *Lockett-Skipper* cases aligns with what other courts have said about the limits of *Lockett-Skipper*. *See, e.g.*, *State v. Berget*, 853 N.W.2d 45, 63–64

15

(S.D. 2014).  That is a good sign that there is room for fairminded disagreement. *See White v. Woodall*, 572 U.S. 415, 422 n.3 (2014).

And indeed there is.  That is partly because of the general terms in which the Supreme Court's *Lockett-Skipper* holdings are stated.  As the Supreme Court has recognized, because "AEDPA authorizes federal courts to grant relief only when state courts act *unreasonably*, it follows that '[t]he more general the rule' at issue—and thus the greater the potential for reasoned disagreement among fairminded judges—'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'" *Renico v. Lett*, 559 U.S. 766, 776 (2010) (citation omitted).  But most importantly, there are valid arguments against extending the *Lockett-Skipper* principle to cases like Jackson's.  Doing so would create arbitrary distinctions between defendants whose cases are remanded for a procedural error at sentencing and those whose cases are not remanded:  the first group would get to update their mitigation evidence, while the second group would not, even though neither group would have experienced any mitigation-related error at the original sentencing hearing.  What is more, to hold "that a new mitigation hearing must be held, even though no constitutional error infected the original one, would transform the right to present relevant mitigation into a right to *update* one's mitigation." *Jackson*, 149 Ohio St. 3d at 69 (quoting *State v. Roberts*, 137 Ohio St. 3d 230, 237

(2013)).  But *that* "right has no clear basis in *Lockett* or its progeny."  *Id.*  True, reasonable jurists could conclude that *Lockett* and *Skipper* ought to be extended to cases like Jackson's.  But precisely because there is room for debate, there is no room for relief under AEDPA.

**II.**  The District Court's contrary ruling rests primarily on its overreading of *Davis v. Coyle*, 475 F.3d 761 (6th Cir. 2007).  In *Davis*, this Court invoked the *Lockett-Skipper* principle to award relief under AEDPA.  More specifically, it held that *Lockett* and *Skipper* clearly entitled the petitioner in that case to present, at a resentencing proceeding, new mitigation evidence on his good prison behavior.  *Id.* at 772–73.  But while *Davis* bears a superficial resemblance to this case, it is distinguishable in a key respect:  in that case, the prosecutor presented an argument in the resentencing proceedings that the petitioner had no way to respond to without presenting new mitigation evidence.  *Id.* at 773.  Thus, by barring the petitioner in *Davis* from presenting new mitigating evidence, the state courts prevented the petitioner from responding to a newly raised argument in support of the death penalty.  This case is different.  At Jackson's resentencing, the prosecutor made "no argument" for him to rebut.  *Jackson*, 149 Ohio St. 3d at 69.  This difference in the state-court proceedings means Jackson was not denied his ability to address all the argu-

ments against him.  Whatever the merits of *Davis*—and the State believes it was wrongly decided—it should not be extended to this distinct fact pattern.

## STANDARD OF REVIEW

In this AEDPA case, the Court must "review *de novo* the district court's conclusions on issues of law and on mixed questions of law and fact." *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (*en banc*).  Any factual findings are reviewed "for clear error."  *Id.*  This Court reviews the District Court's grant of habeas relief *de novo.  James v. Brigano*, 470 F.3d 636, 643 (6th Cir. 2006).

## ARGUMENT

**I.    Jackson's Eighth Amendment claim does not entitle him to relief under the demanding standards applicable under AEDPA.**

This AEDPA case presents the question whether any fairminded jurist could conclude that Jackson's resentencing proceedings comported with Supreme Court precedent.  Because the answer to that question is "yes," Jackson is not entitled to relief.  The District Court erred in holding otherwise.

**A.    AEDPA imposes a nearly insurmountable bar to habeas relief.**

AEDPA allows federal courts to award habeas relief in only limited circumstances.  For example, and relevant here, AEDPA says that courts may grant habeas relief to petitioners who are in custody because of a state-court decision that was "contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States.   28 U.S.C. §2254(d)(1).   The phrase "clearly established Federal law," in this context, "includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (quotation omitted) (*per curiam*). What does it take for a state-court decision to be "contrary to," or to constitute "an unreasonable application of," Supreme Court precedent?  Quite a bit.

*Contrary to.*  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citation omitted).  A state court's decision is "contrary to" the Court's cases in only two situations.  *First*, if it "applies a rule that contradicts the governing law set forth in [the Court's] cases."  *Id.* at 405.  *Second*, if it "confronts a set of facts that are materially indistinguishable from a decision of" the Supreme Court "and nevertheless arrives at a result different from" the Supreme Court's "precedent." *Id.* at 406.

"Avoiding these [two] pitfalls does not require citation of [the Court's] cases—indeed, it does not even require *awareness* of [its] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam*).  Federal courts thus should not show a "readiness to attribute error" to state courts. *Woodford v. Visciotti*, 537 U.S. 19, 24

(2002) (*per curiam*).  Instead, state courts must "be given the benefit of the doubt" in federal habeas proceedings.  *Id.*

 ***Unreasonable application of.***  The phrase "unreasonable application" means something different.  It requires courts to "assess whether the [state court's] decision 'unreasonably applies [the governing legal] principle to the facts of the prisoner's case.'"  *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Williams*, 529 U.S. at 413).  The Supreme Court has repeatedly "explained that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'"  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 410).  A state court's decision must be so wrong—"so lacking in justification"—"that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  Unless the state court "managed to blunder so badly that every fairminded jurist would disagree" with its ruling, this standard is not satisfied.  *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (*per curiam*) (citing *Knowles v. Mirzayance*, 556 U. S. 111, 123 (2009)).

### B. Jackson is not entitled to habeas relief under AEDPA's demanding standards.

**1.** Recall what Jackson is arguing and what the Supreme Court of Ohio held.

In Jackson's original sentencing proceedings, the trial court allowed him to present "all the mitigation evidence he desired." *State v. Jackson*, 149 Ohio St. 3d 55, 67 (2016). It sentenced him to death nonetheless. *See id.* at 58. Later, after discovering that the trial court had allowed an assistant prosecutor to help draft the sentencing opinion, Jackson appealed. Because the trial court erred by accepting the prosecutor's help, the Ohio Court of Appeals remanded Jackson's case for a proper resentencing.

At the resentencing hearing that followed this remand, the prosecutor opted to present no argument at all, instead resting on the record as it existed already. *See id.* at 69–70; Tr. Ct. Supp. App'x, R.47–17, PageID#13525–54 (transcript of resentencing hearing). Jackson did proffer new mitigation evidence—namely, a report from the same psychologist who testified at Jackson's original hearing, and evidence regarding events and records that largely *predated* the original hearing. *See* Tr. Ct. Supp. App'x, R.47–14, 47–15, 47–16, 47–17, PageID#12619–13472 (proffer materials); *see also* Tr. Ct. Supp. App'x, R.47–17, PageID#13530–31 (trial court, observing that proffered materials were largely repetitive of what was presented at the original trial); *Jackson*, 149 Ohio St. 3d at 75 (noting that the trial judge "had before him the same mitigating evidence, except for the information conveyed in Jackson's 2012 allocution, in 2002 and 2012"). The trial court did not allow Jackson to pre-

sent this evidence, though it did permit him to file it in the record.  Tr. Ct. Supp. App'x, R.47–17, PageID#13528–31, 13538.

The Supreme Court of Ohio ultimately affirmed the re-imposed sentence.  It held that, while the U.S. Supreme Court's Eighth Amendment cases entitle defendants to introduce mitigating evidence at a sentencing, no decision entitles defendants who already had a full opportunity to present mitigating evidence "to introduce new mitigation evidence" during resentencing.  *Jackson*, 149 Ohio St. 3d at 67.  Particularly when the government does not present any new evidence or make any new arguments of its own, the court held, defendants have no right to present new evidence at a resentencing.

**2.**  Jackson argues that the Eighth Amendment entitled him to present new mitigation evidence during his resentencing.  The question is not whether he is right.  Instead, the question is whether the Supreme Court of Ohio, in rejecting Jackson's argument, issued a decision that was "contrary to" or an "unreasonable application of" a Supreme Court holding.  The answer to that question is "no."

Start by identifying the relevant Supreme Court cases.  That is easy enough. The relevant cases are *Lockett v. Ohio*, 438 U.S. 586 (1978), *Eddings v. Oklahoma*, 455 U.S. 104 (1982), and *Skipper v. South Carolina*, 476 U.S. 1 (1986).  All three of these cases hold that, "in capital cases … the Eighth Amendment … requires con-

sideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Lockett*, 438 U.S. at 604 (op. of Burger, C.J.) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976)); *see also* 438 U.S. at 613–15, 617–19 (Blackmun, J., concurring in the judgment); *Eddings*, 455 U.S. at 113–14; *Skipper*, 476 U.S. at 4.

*Skipper*, in addition to reaffirming this principle, addresses a due-process issue. It does so in a footnote that at least arguably constitutes *dicta*, as it was unnecessary for the disposition. There, the Court explained that, under the Due Process Clause, "a defendant [should] not be sentenced to death 'on the basis of information which he had no opportunity to deny or explain.'" 476 U.S. at 5 n.1 (quoting *Gardner v. Florida*, 430 U.S. 349, 362 (1977)). The South Carolina courts in *Skipper* violated this principle because the mitigating evidence they barred from consideration would have tended to contradict the prosecution's argument for the death penalty. *Id.* at 4–5. Specifically, the courts would not allow the defendant in *Skipper* to introduce evidence of his good behavior in prison, even though that evidence would have responded directly to the prosecution's argument that the defendant would be violent in prison if allowed to serve a life sentence.

All together, these cases establish that a sentencing authority must be allowed to consider whatever mitigating evidence the defendant might wish to introduce, *especially* if the mitigating evidence tends to contradict the prosecution's argument for death.

**3.**  The Supreme Court of Ohio's decision was neither contrary to, nor an unreasonable application of, any holding from *Lockett*, *Eddings*, or *Skipper*.

***Contrary to.***  As discussed above, a state court's adjudication of a claim is "contrary to … clearly established Federal law" under AEDPA only if it either: (1) "confronts a set of facts that are materially indistinguishable from a decision of" the Supreme Court "and nevertheless arrives at a result different from" the Supreme Court's "precedent"; or (2) "applies a rule that contradicts the governing law set forth in" a holding of the Supreme Court.  *Williams*, 529 U.S. at 405, 406. The Ohio Supreme Court committed neither error.

No Supreme Court case involves the defendant's right to introduce new mitigating evidence at a resentencing proceeding.  Thus, no Supreme Court precedent involves "facts that are materially indistinguishable" from the facts of this case.  *Id.* at 406.

It follows that Jackson can satisfy the "contrary to" prong only by showing that the Supreme Court of Ohio applied "a rule that contradicts the governing law

set forth" in a holding of the Supreme Court. *Id.* at 405. The Ohio Supreme Court did not do that for a simple reason: the Supreme Court has never considered, and so it has never adopted a rule for deciding, whether and when a defendant may introduce new mitigating evidence in "a proceeding on remand for the limited purpose of correcting an error that occurred *after* the defendant had had a full, unlimited opportunity to present mitigating evidence to the sentencer." *Jackson*, 149 Ohio St. 3d at 68 (quotation omitted). No doubt, the *Lockett-Skipper* line of cases holds that capital defendants must be allowed to introduce mitigation evidence. But the Ohio Supreme Court did not hold otherwise. Indeed, it expressly acknowledged that capital defendants have a right to present mitigating evidence. *Id.* at 66–67 (quoting *Lockett*, 438 U.S. at 604 (plurality opinion)). It simply went on to hold that there is no "categorical constitutional right to introduce new mitigation evidence that is discovered after a sentencing hearing in which the defendant was given an opportunity to present all the mitigation evidence he desired." *Jackson*, 149 Ohio St. 3d at 67. None of that contradicts any holding in *Lockett*, *Eddings*, *Skipper*, or any other Supreme Court case.

In sum, the U.S. Supreme Court has never considered "whether a remand for a limited resentencing in a capital case that effectively excludes the presentation of newly discovered mitigation evidence is constitutionally invalid." *Id.* (citation

omitted).  *Id.* at 67.  Because it has announced no rule governing such cases, the Supreme Court of Ohio could not have failed to apply any such rule.

*Unreasonable application of.*   The only remaining question is whether the Ohio Supreme Court unreasonably applied a holding of the U.S. Supreme Court. In other words, did the court's application of some Supreme Court holding constitute "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement"?  *Harrington*, 562 U.S. at 103.

The answer is again "no," and for similar reasons.  At the risk of undue repetition, neither *Lockett*, *Eddings*, *Skipper*, nor any other U.S. Supreme Court case addresses the following question:  Is there a right to introduce new mitigating evidence during "a proceeding on remand for the limited purpose of correcting an error that occurred *after* the defendant had had a full, unlimited opportunity to present mitigating evidence to the sentencer"?  *Jackson*, 149 Ohio St. 3d at 68 (quotation omitted).  Instead, the Court's cases say only, in general terms, that the Eighth Amendment entitles defendants to introduce mitigating evidence, and that the Due Process Clause prohibits sentencing a defendant to death "on the basis of information which he had no opportunity to deny or explain."  *Skipper*, 476 U.S. at 5 n.1 (quoting *Gardner*, 430 U.S. at 362).

Because no case expressly addresses the circumstances presented here, the unreasonable-application question comes down to this:  Is there room for fairminded disagreement with respect to the question whether, under the *Lockett-Skipper* line, capital defendants who already had a chance to introduce mitigating evidence may introduce *new* mitigating evidence at a resentencing hearing held to correct an unrelated error?  There is.

As an initial matter, *Lockett* and *Skipper* express their holdings in general terms, stating simply that defendants have a right to introduce mitigating evidence. That general phrasing creates room for fairminded disagreement:  "Because AEDPA authorizes federal courts to grant relief only when state courts act *unreasonably*, it follows that '[t]he more general the rule' at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'"  *Renico*, 559 U.S. at 776 (citation omitted).  So it is here.

Next, and as the Ohio Supreme Court correctly recognized, there are sound reasons *not* to extend the *Lockett-Skipper* principle to cover cases like this one.  For one thing, doing so would create an arbitrary distinction between those defendants whose cases are remanded for a resentencing hearing and those whose cases are not sent back for that reason.  *See Jackson*, 149 Ohio St. 3d at 69, ¶64.  As the Ohio Su-

preme Court reasoned, to hold "that a new mitigation hearing must be held, even though no constitutional error infected the original one, would transform the right to present relevant mitigation into a right to *update* one's mitigation … [and] [s]uch a right has no clear basis in *Lockett* or its progeny." 149 Ohio St. 3d at 69 (quoting *State v. Roberts*, 137 Ohio St. 3d 230, 237 (2013)). It makes no sense to say that two defendants, who had the same opportunity to present mitigating evidence at their hearings, have differing rights to present *new* mitigating evidence later simply because one such defendant won a remand for some reason unrelated to mitigation.

Extending these cases would present still more problems. One problem stems from the fact that, in Ohio, as in other States, an appellate court reviewing a death sentence must independently weigh the aggravating and mitigating evidence. *See* Ohio Rev. Code §2929.05(A). Thus, every appellate court "could be considered a 'sentencer' for *Lockett* purposes." *Roberts*, 137 Ohio St. 3d at 237. But if *that* is true, then a right to update mitigation evidence "would imply that a capital defendant … [has] a right to present new mitigation to the appellate court." *Id.* It is hard to believe that the Supreme Court, in *Lockett* and *Skipper*, meant to effect so fundamental a change to the operation of state courts.

One other consideration counsels against extending the *Lockett-Skipper* line any further: *Lockett*, *Skipper*, and *Eddings* are all contrary to the Constitution's orig-

inal meaning. "Judges ... live on the slippery slope of analogies; they are not sup-posed to ski it to the bottom." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1645 (2018) (Ginsburg, J., dissenting) (quoting R. Bork, *The Tempting of America* 169 (1990)). When it comes to precedent, one sound basis for hitting the brakes is that failing to do so would cause the case law to drift further from the Constitution's original meaning. As then-Judge Kavanaugh put it, courts should "resolve questions about the scope of ... precedents in light of and in the direction of the constitutional text and constitutional history." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 537 F.3d 667, 698 (D.C. Cir. 2008) (Kavanaugh, J., dissenting).

Whatever one thinks of the *Lockett-Skipper* line as a prudential matter, those cases have no basis in the Constitution's text or history. The prohibition on "cruel and unusual punishments," U.S. Const., Am. 8, was originally understood to forbid certain methods of punishment, not to confer procedural evidentiary rights. *See Walton v. Arizona*, 497 U.S. 639, 670 (1990) (Scalia, J., concurring in part and con-curring in the judgment). A reasonable jurist could conclude that, when the Consti-tution and precedent are at odds, "the rule of law may" require "confining that precedent, rather than extending it further." *Preterm-Cleveland v. McCloud*, 994 F.3d 512, 543 (6th Cir. 2021) (*en banc*) (Bush, J., concurring) (quoting *NLRB v. Int'l Ass'ns of Bridge & Iron Workers, Local 229*, 974 F.3d 1106, 1117 (9th Cir. 2020)

(Bumatay, J., dissenting from denial of rehearing *en banc*)).  To be sure, other judges reject that approach to precedent.  Here, however, the question is whether there is room for fairminded debate.  Given the many fairminded jurists who embrace this approach to the application of precedent, there is unquestionably room for fair-minded debate.

Numerous judges have already determined that *Lockett* and its progeny ought not be extended to resentencing hearings held to correct procedural errors unrelated to mitigation.  *See Jackson*, 149 Ohio St. 3d 55; *State v. Berget*, 853 N.W.2d 45, 63–64 (S.D. 2014).  The foregoing shows that those holdings are, at the very least, defensible.  As such, the Supreme Court of Ohio's refusal to extend *Lockett-Skipper* to this novel context does not constitute an unreasonable application of Supreme Court precedent.

## II.    The District Court erred in ruling for Jackson.

The District Court awarded habeas relief to Jackson.  In doing so, it did not call into question the preceding analysis.  Instead, it concluded that this Court's decision in *Davis v. Coyle*, 475 F.3d 761 (6th Cir. 2007), set forth the correct reading of *Lockett*, *Eddings*, and *Skipper*, and required a ruling in Jackson's favor.  *See* Op. & Order, R.80, PageID#23853.  That, however, is wrong.

In *Davis*, as in this case, the Court considered a habeas petition that invoked the *Lockett-Skipper* principle. And in *Davis*, as in this case, the petitioner (Davis) claimed a right to introduce new mitigation evidence during a resentencing hearing held after a remand ordering correction of a sentencing error. *State v. Davis*, 38 Ohio St. 3d 361, 368–73 (1988).

But the similarities between *Davis* and this case end there. At Davis's resentencing hearing, the prosecutor argued that, because Davis was a repeat offender—he had murdered his wife years earlier—he was too dangerous to get anything but a death sentence. 475 F.3d at 772–73; *see also id.* at 783 (Gibbons, J., concurring). Davis understandably wished to respond with evidence regarding his good behavior in prison, including testimony from prison guards and a social worker. *Id.* at 770, 772–73 (majority). That evidence, after all, would have tended to contradict the prosecution's argument. *Id.* at 773. But the state trial court did not let Davis introduce the evidence, effectively allowing the prosecution's argument to go unrebutted. The Ohio Supreme Court affirmed based on its "belief that the facts of Davis's case could be distinguished from *Skipper*'s solely on the basis of timing"—*Skipper* involved exclusion at an initial hearing, whereas Davis's case involved the exclusion of mitigating evidence during a *resentencing* hearing. *Id.*

This Court in *Davis* rejected the Ohio Supreme Court's reasoning. It determined that any reasonable application of *Skipper* required state courts, even during a resentencing hearing, to introduce evidence relevant to assessing the prosecution's argument for the death penalty. *Id*. On that ground, *Davis* awarded habeas relief. *Id*.

As this description shows, *Davis* does not control here. It stands only for the proposition that a state court unreasonably applies the *Lockett-Skipper* principle if it refuses to let a defendant introduce mitigation evidence *in response* to arguments raised by the State during resentencing. The limited scope of *Davis*'s holding is critical here, because the prosecution in Jackson's case did not make any new argument for the death penalty—it rested its case entirely on the already-fully-developed record. As a result, and as the Supreme Court of Ohio correctly held, *Davis*'s holding has no bearing on this case: *Davis* interprets the *Lockett-Skipper* line of cases to (clearly) give defendants a right to introduce evidence in response to prosecutors' arguments at resentencing, and the prosecution in Jackson's case made no argument at the resentencing hearing for Jackson to rebut. *See* 149 Ohio St. 3d at 69–70, ¶68.

Because *Davis* does not directly control, applying it here means extending it. But *Davis* ought not be extended, because any extension would flout the principles

of AEDPA. As the previous section showed, Jackson has no sound argument for AEDPA relief under the Supreme Court's cases interpreting §2254(d)(1). (Many of those cases, it is worth noting, post-date *Davis*.) The Court should not extend *Davis* to permit an award of habeas relief in circumstances, such as those presented here, where doing so would contradict AEDPA's text and Supreme Court precedent interpreting that text.

To the extent the District Court below offered any independent reasoning, it ignored the limited nature of AEDPA review. In particular, instead of asking whether any fairminded jurist could agree with the Ohio Supreme Court's application of *Lockett* and *Skipper*, the District Court focused whether the Court in *Davis correctly* applied those cases. The District Court, for example, homed in on general principles underlying the *Lockett-Skipper* line, such as the principle that every capital defendant "has a constitutional right to mitigate his sentence." Op. & Order, R.80, PageID#23850. It then opined that the Ohio Supreme Court's ruling in *Jackson* "destroys" and "guts" this principle. *Id.*, at PageID#23853. But that is simply not true. As the discussion above shows, there are plenty of good reasons to doubt whether the *Lockett-Skipper* line ought to be extended to this novel context. No doubt, there are also arguments *for* extending the cases. But the question here is whether a fairminded jurist *could* conclude that the cases ought not be extended.

Because the answer is "yes," the District Court's arguments regarding the *best* reading of *Lockett* and *Skipper* are beside the point.

If this Court deems *Davis* to require affirmance, Ohio preserves its argument that *Davis* ought to be overruled by the *en banc* Court.

## CONCLUSION

The Court should reverse the District Court's judgment.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Benjamin M. Flowers*
BENJAMIN M. FLOWERS*
Ohio Solicitor General
 *\*Counsel of Record*
DIANE R. BREY
Deputy Solicitor General
30 East Broad Street, 17th Floor
6l4–466–8980
benjamin.flowers@ohioattorneygeneral.gov

*Counsel for Appellant Warden*

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, this brief complies with the type-volume requirements for a principal brief and contains 7,576 words. *See* Fed. R. App. P. 28.1(e)(2)(A)(i).

I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14–point Equity font.

*/s/ Benjamin M. Flowers*
BENJAMIN M. FLOWERS

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2023, this brief was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Benjamin M. Flowers*
BENJAMIN M. FLOWERS

# DESIGNATION OF DISTRICT COURT RECORD

Defendant-Appellee, pursuant to Sixth Circuit Rule 30(g), designates the following filings from the District Court's electronic records:

### *Jackson v. Houk*, 4:07-cv-0880

| Date Filed | R. No.; PageID# | Document Description |
| --- | --- | --- |
| 10/31/2007 | R.14 | Petition |
| 7/14/2017 | R.47–14; 12619–819 | Trial Court Supplemental Appendix Part 14 |
| 7/14/2017 | R.47–15; 12820–13005 | Trial Court Supplemental Appendix Part 15 |
| 7/14/2017 | R.47–16; 13006–274 | Trial Court Supplemental Appendix Part 16 |
| 7/14/2017 | R.47–17; 13275–472, 13525–54 | Trial Court Supplemental Appendix Part 17 |
| 7/14/2017 | R.48–7; 15276–78 | Supplemental Appendix Ohio Supreme Court 2012-1644 |
| 7/14/2017 | R.49–9; 23156, 23205, 23283 | State Court Transcript Volume 16 |
| 2/23/2021 | R.80; 23849–54 | Opinion and Order to Remand |
| 2/24/2021 | R.81; 23878 | Letter of Remand |
| 3/2/2021 | R.82; 23879–80 | Respondent Notice of Appeal |
| 3/17/2021 | R.86; 23893–94 | Petitioner Notice of Cross-Appeal |
| 3/25/2021 | R.88; 23898 | Certificate of Appealability |