Nos. 21-3207 & 21-3280

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

## DEATH PENALTY CASE

| | | |
|---|---|---|
| NATHANIEL JACKSON, | : | On Appeal from the |
|     Appellee/Cross-Appellant, | : | United States District Court |
| v. | : | for the Northern District of Ohio |
| | : | Eastern Division |
| BILL COOL, WARDEN, | : | |
|     Appellant/Cross-Appellee. | : | District Court Case No. |
| | : | 4:07-cv-0880 |
| | : | |

## PETITION FOR PANEL REHEARING OR REHEARING EN BANC
## OF APPELLANT WARDEN

DAVE YOST
Attorney General of Ohio

T. ELLIOT GAISER*
Ohio Solicitor General
 *Counsel of Record*
MICHAEL J. HENDERSHOT
Chief Deputy Solicitor General
JANA M. BOSCH
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614-466-8980
thomas.gaiser@ohioago.gov

*Counsel for Warden*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................ii

RULE 35(B) STATEMENT AND INTRODUCTION .........................................1

STATEMENT ..................................................................................2

ARGUMENT...................................................................................5

I.    The Panel went beyond Supreme Court precedent to create a right to retry the mitigation phase on remand for any reason. .............................5

II.   The Panel erred on the bias claim. ...........................................9

CONCLUSION................................................................................10

CERTIFICATE OF COMPLIANCE .....................................................11

CERTIFICATE OF SERVICE ...........................................................12

i

## TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Allen v. Buss,*
    558 F.3d 657 (7th Cir. 2009) ............................................................... 2

*Bucklew v. Precythe,*
    587 U.S. 119 (2019) .......................................................................... 8

*Davis v. Coyle,*
    475 F.3d 761 (6th Cir. 2007) ............................................................... 7

*Davis v. Jenkins,*
    No. 21-3404 (Aug. 20, 2024) (en banc) ............................................... 1

*Disciplinary Couns. v. Stuard,*
    121 Ohio St. 3d 29 (2009) .................................................................. 3

*Eddings v. Oklahoma,*
    455 U.S. 104 (1982) .......................................................................... 6

*Harrington v. Richter,*
    562 U.S. 86 (2011) ............................................................................ 5

*Hill v. Shoop,*
    11 F.4th 373 (6th Cir. 2021) (en banc) ................................................ 1

*In re Hill,*
    81 F.4th 560 (6th Cir. 2023) (en banc) ................................................ 1

*Hitchcock v. Dugger,*
    481 U.S. 393 (1987) .......................................................................... 5

*Jackson v. Denno,*
    378 U.S. 368 (1964) .......................................................................... 6

*Jackson v. Houk,*
    2021 WL 698590 (N.D. Ohio Feb. 23, 2021) ....................................... 4

*Johnson v. Williams,*
    568 U.S. 289 (2013) ....................................................................... 5, 9

*Lockett v. Ohio*,
438 U.S. 586 (1978) ............................................................ 6, 7, 8, 9

*Roberts v. Baldauf*,
2023 WL 5229816 (N.D. Ohio Aug. 15, 2023) ................................... 4

*Rogers v. Mays*,
69 F.4th 381 (6th Cir. 2023) (en banc) ........................................ 5, 9

*Skipper v. South Carolina*,
476 U.S. 1 (1986) .................................................................. 6, 7, 8

*State v. Chinn*,
85 Ohio St. 3d 548 (1999) ........................................................... 6

*State v. Jackson*,
149 Ohio St. 3d 55 (2016) ................................................. 2, 3, 4, 7

*State v. Jackson*,
190 Ohio App. 3d 319 (11th Dist. 2010) ........................................ 3

*State v. Roberts*,
110 Ohio St. 3d 71 (2006) ...................................................... 2, 3

*State v. Roberts*,
137 Ohio St. 3d 230 (2013) ..................................................... 3, 8

*State v. Roberts*,
150 Ohio St. 3d 47 (2017) ........................................................... 4

*United States v. Grant*,
15 F.4th 452 (6th Cir. 2021) ........................................................ 6

*Waller v. Georgia*,
467 U.S. 39 (1984) ...................................................................... 6

*White v. Woodall*,
572 U.S. 415 (2014) .................................................................... 8

## Statutes, Rules, and Constitutional Provisions

U.S. Const. amend. VIII ........................................................... 8

28 U.S.C. §2254 ..................................................................................... 5

Fed. R. App. P. 35 ........................................................................... 1, 9

Ohio Rev. Code §2929.05 ..................................................................... 8

## RULE 35(B) STATEMENT AND INTRODUCTION

Petitions for en banc rehearing ought to be rare. And indeed, because of the Attorney General's respect for this Court's limited resources—and for panel decisions even when arguably wrong—Ohio seeks en banc review in a small fraction of cases before this Court. The Attorney General weighs the gravity of the error, the extent of conflict with other authorities, and the effect on administration of the law for Ohio and its sister States against the costs to judicial economy imposed by any en banc petition. *See* Fed. R. App. P. 35(b). Only in rare cases is such an extraordinary request appropriate. *See, e.g.*, *Davis v. Jenkins*, No. 21-3404 (Aug. 20, 2024) (en banc); *In re Hill*, 81 F.4th 560 (6th Cir. 2023) (en banc); *Hill v. Shoop*, 11 F.4th 373 (6th Cir. 2021) (en banc).

This is one of the rare cases calling for en banc review. If the Panel opinion stands, it will require an all-new mitigation hearing any time a state court in this Circuit remands a death penalty case for any reason—including when no error occurred in the first mitigation hearing. Slip Op. at 13. This precedent will redound to the great harm of Sixth Circuit States, who will be forced to waste resources on long— sometimes weeks-long—mitigation hearings, even though they followed all Supreme Court law on mitigation in the first round. Even if the Court ultimately rules for Jackson on his separate judicial-bias claim, the Panel's precedent-setting error on the

mitigation claim is appropriate for en banc review because it alters the remedy Jackson receives in the state courts.  The Panel's judicial-bias holding would afford only a clean slate on the judicial weighing and entry of the sentence.  But the Panel's mitigation-redo holding requires the State to perform an all-new mitigation hearing as well.

Moreover, this error will directly control the pending co-defendant's case (*Roberts*), and could potentially affect any of the 21 other pending death penalty cases in this Court and the 64 pending death-penalty cases in this Circuit's district courts.  And as far as the Attorney General can tell, the Sixth Circuit will lead the way in determining whether to bless claims like Jackson's, which at least one other habeas petitioner has raised, but no circuit court has yet decided on the merits.  *See Allen v. Buss*, 558 F.3d 657, 666 (7th Cir. 2009).  It is thus likely that unless corrected, the Panel opinion's influence will spill beyond the Sixth Circuit's borders.

## STATEMENT

Nathaniel Jackson murdered Robert Fingerhut as part of a premeditated scheme with Fingerhut's wife, Donna Roberts, to reap life insurance benefits and resume a romantic relationship.  *State v. Jackson*, 149 Ohio St. 3d 55, 56–57 (2016).  Both were convicted.  *Id.* at 58; *State v. Roberts*, 110 Ohio St. 3d 71, 80 (2006).  Both had a mitigation phase featuring an unrestricted opportunity to present mitigation

evidence, although Roberts waived the presentation of mitigation evidence and urged the jury to impose the death penalty. *Jackson*, 149 Ohio St. 3d at 70; *Roberts*, 110 Ohio St. 3d at 89. Both received a recommendation of death from the jury. *Jackson*, 149 Ohio St. 3d at 58; *State v. Roberts*, 137 Ohio St. 3d 230, 232 (2013). And for both, the judge agreed that a sentence of death was warranted. *Jackson*, 149 Ohio St. 3d at 58; *Roberts*, 137 Ohio St. 3d at 232.

But after the guilt phase and mitigation phase, both cases suffered from the same ethical violation in the sentencing phase. The trial court gave the prosecutor ex parte instructions to draft the sentencing entries for both. *Disciplinary Couns. v. Stuard*, 121 Ohio St. 3d 29, 30–31 (2009); *State v. Jackson*, 190 Ohio App. 3d 319, 325 (11th Dist. 2010). So both cases were remanded for the judge to redo the sentencing phase without ex parte communications. *Jackson*, 190 Ohio App. 3d at 326; *Roberts*, 110 Ohio St. 3d at 95.

On remand, both defendants argued for a second chance to present mitigation evidence. *Jackson*, 149 Ohio St. 3d at 66; *Roberts*, 137 Ohio St. 3d at 232–33. But because the error in preparing the sentencing entry had not impacted their mitigation hearing on the first round, the court declined for both. *Jackson*, 149 Ohio St. 3d at 66–71; *Roberts*, 137 Ohio St. 3d at 233–37. It resumed from the point of error—the sentencing entry—and issued an entry without any further ex parte communications.

3

In Jackson's case, the final sentencing entry was not substantially different than the original. *Jackson*, 149 Ohio St. 3d at 74–75. Roberts's case had one extra remand related to her right to allocution, so her ultimate sentencing entry was penned by a replacement judge following the death of the original sentencing judge. *State v. Roberts*, 150 Ohio St. 3d 47, 51 (2017).

Both sought federal habeas review, with Jackson's case several months ahead of Roberts's. *Jackson v. Cool*, Nos. 21-3207, 21-3280; *Roberts v. Baldauf*, No. 23-3789. Relevant here, the district court rejected Jackson's claim of judicial bias but granted habeas on Jackson's mitigation-hearing claim. *Jackson v. Houk*, 2021 WL 698590, at *8–11 (N.D. Ohio Feb. 23, 2021). A different district-court judge rejected Roberts's claims, including the mitigation-hearing claim. *Roberts v. Baldauf*, 2023 WL 5229816, at *20–28 (N.D. Ohio Aug. 15, 2023).

Jackson and Roberts both appealed. The panel in Jackson's case ruled that the judge had been unconstitutionally biased and that Jackson should have had a chance to redo his mitigation phase when his case was remanded. The Panel's holding in Jackson's case directly controls Roberts's case, which is pending in this Court on only the mitigation-hearing claim.

## ARGUMENT

When a habeas petitioner raises a claim that the state courts already adjudicated on the merits, the Antiterrorism and Effective Death Penalty Act (AEDPA) permits federal courts to award habeas relief "only if the state court's decision (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court' or (2) 'was based on an unreasonable determination of the facts.'" *Rogers v. Mays*, 69 F.4th 381, 389 (6th Cir. 2023) (en banc) (quoting 28 U.S.C. §2254(d)). This text does not permit federal appeals courts to establish the law that binds state courts, *Johnson v. Williams*, 568 U.S. 289, 305 (2013), or to grant relief any time a federal court would have decided a case differently in the first instance, *Harrington v. Richter*, 562 U.S. 86, 103 (2011). But the Panel decision did both when it created a new right to update mitigation evidence on remand. The Panel decision must be vacated to prevent it from binding future panels to the same errors, including the pending companion case.

**I. The Panel went beyond Supreme Court precedent to create a right to retry the mitigation phase on remand for any reason.**

Every defendant is "permitted to present any and all relevant mitigating evidence that is available" at a capital-sentencing hearing. *Hitchcock v. Dugger*, 481 U.S. 393, 399 (1987). The Supreme Court has found an Eighth Amendment violation when the defendant is blocked from presenting, or the sentencing court was blocked

from considering, mitigating evidence. *Lockett v. Ohio*, 438 U.S. 586, 604–05 (1978) (op. of Burger, C.J.); *Eddings v. Oklahoma*, 455 U.S. 104, 110, 112–13 (1982); *Skipper v. South Carolina*, 476 U.S. 1, 5 (1986). That means that Jackson and Roberts were constitutionally entitled to present their sentencing juries with any and all mitigation evidence they wished.

But the Supreme Court has never commanded that state courts must redo the mitigation phase when a case is remanded for an unrelated error. Indeed, that would make little sense. "[W]hen a discrete issue causes the need for remand, complete reconsideration on resentencing may be unnecessary and unwarranted." *United States v. Grant*, 15 F.4th 452, 459 (6th Cir. 2021) (quotation omitted). For example, imposing a double-sentence in violation of the Double Jeopardy Clause calls for a limited remand to remove one of the sentences, not to redo the sentence calculations. *Id.* And a remand for failure to have the defendant present when the sentence is announced would not call for a new mitigation hearing; it would call for a new pronouncement done in the defendant's presence. *See State v. Chinn*, 85 Ohio St. 3d 548, 563–64 (1999). Anything more is not only a burden on the State, but also an undeserved "windfall for the defendant, and not in the public interest." *Waller v. Georgia*, 467 U.S. 39, 50 (1984); *see also Jackson v. Denno*, 378 U.S. 368, 395 (1964) (requiring the state court to remedy only the elements infected by error).

6

Nevertheless, this Court expanded on Supreme Court precedent in *Davis v. Coyle* to hold that *Lockett* and *Skipper* clearly establish a defendant's right to introduce rebuttal mitigation evidence in response to the prosecution's arguments at resentencing. 475 F.3d 761 (6th Cir. 2007). At Davis's resentencing, the prosecution argued that Davis would continue to be dangerous in prison. *Id.* at 772–73; *id.* at 783 (Gibbons, J., concurring). The state court refused to let Davis introduce evidence of his good behavior on death row to rebut that argument. This, the Sixth Circuit held, was contrary to *Lockett* and *Skipper*. *Id.* at 770–74.

The Panel opinion further stretches *Davis* to the breaking point. Unlike the defendants in the relevant Supreme Court precedents, Jackson "had the unrestricted opportunity to present mitigating evidence during his original mitigation hearing." *Jackson*, 149 Ohio St. 3d at 71. And unlike the defendant in *Davis*, Jackson did not face a renewed argument of future dangerousness. But the Panel purported to be "bound" by *Davis* and held that defendants who already had a full and fair opportunity to present mitigation evidence have a right to introduce new evidence when on a limited remand for the correction of a different sentencing error. Slip Op. at 16. This holding "transform[s] the right to present relevant mitigation into a right to update one's mitigation." *Jackson*, 149 Ohio St. 3d at 69 (quotation omitted).

Many legal and practical concerns caution against such expansion. Most prominently, extending Supreme Court precedent in a habeas case—even reasonably—is forbidden. *White v. Woodall*, 572 U.S. 415, 426 (2014). And the *Skipper* line of cases already went beyond the original understanding of the Eighth Amendment, which prohibits "cruel and unusual punishment," U.S. Const. amend. VIII, a consideration that weighs against expanding the scope still further, *see Bucklew v. Precythe*, 587 U.S. 119, 129–35 (2019).

Practically, the expansion creates arbitrary distinctions between defendants with equally untainted sentencing hearings by offering a chance to retry the mitigation phase for the defendant with an unrelated error that led to remand. And even more concerning, the sweeping scope of the Panel's new right jeopardizes sentencing law in States, like Ohio, that task their appellate courts with independently weighing the aggravating and mitigating evidence on direct review. *See* Ohio Rev. Code §2929.05(A). If *Lockett* and *Skipper* mean that anyone "tasked with determining whether the death penalty or life in prison was the appropriate sentence" must admit whatever evidence exists at that moment in time, Slip Op. at 18, the Panel's rule would at least arguably create a right to present new mitigation evidence to the appellate court. *See Roberts*, 137 Ohio St. 3d at 237.

The full Court should review this case and clarify that *Lockett* and its progeny declare a right to *one* full and fair mitigation hearing—not a right to re-open the mitigation evidence on every remand.

## II.   The Panel erred on the bias claim.

The Panel held that the Ohio Supreme Court's decision warranted no deference because the state court applied the wrong standard.  Although the Panel's opinion violates precedent about interpreting state-court opinions, *see Rogers*, 69 F.4th at 389; *Johnson v. Williams*, 568 U.S. 289, 298 (2013), it is the above-discussed creation of a right to retry mitigation that presents the exceptionally important error calling for the full Court's attention, *see* Fed. R. App. P. 35(b).

* * *

The Panel's opinion holding creates a right to redo the mitigation phase, and that conflicts with binding precedent from this Court and the Supreme Court. It also creates devastating precedent that will impair the States' ability to administer their justice systems even though they are following Supreme Court precedent.  The full Court should grant en banc review.

## CONCLUSION

The Panel should reconsider its holding, or the Court should grant this petition for rehearing en banc.

Respectfully submitted,

DAVE YOST
Attorney General of Ohio

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER*
Ohio Solicitor General
  *Counsel of Record*
MICHAEL J. HENDERSHOT
Chief Deputy Solicitor General
JANA M. BOSCH
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614-466-8980
thomas.gaiser@ohioago.gov

*Counsel for Warden*

## CERTIFICATE OF COMPLIANCE

I hereby certify that, in accordance with Federal Rule of Appellate Procedure 32(g), the foregoing petition contains 2,084 words in accordance with Federal Rules of Appellate Procedure 35(b)(2) and 40(b).

I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity font.

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August 2024, this brief was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER

# APPENDIX

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0164p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT
_____

NATHANIEL JACKSON,

      *Petitioner-Appellee/Cross-Appellant,*

      *v.*

BILL COOL, Warden,

      *Respondent-Appellant/Cross-Appellee.*

Nos. 21-3207/3280

_____

Appeal from the United States District Court for the Northern District of Ohio at Youngstown.
No. 4:07-cv-00880—James S. Gwin, District Judge.

Argued:  March 18, 2024

Decided and Filed:  August 6, 2024

Before:  MOORE, COLE, and GRIFFIN, Circuit Judges.
_____

### COUNSEL

**ARGUED:**  Jana M. Bosch, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant/Cross-Appellee. Adam M. Rusnak, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE SOUTHERN DISTRICT OF OHIO, Columbus, Ohio, for Appellee/Cross-Appellant. **ON BRIEF:**  Jana M. Bosch, Benjamin M. Flowers, Diane R. Brey, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant/Cross-Appellee.  Adam M. Rusnak, Paul R. Bottei, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE SOUTHERN DISTRICT OF OHIO, Columbus, Ohio, for Appellee/Cross-Appellant.

---

## OPINION

---

GRIFFIN, Circuit Judge.

The Great Writ of Habeas Corpus is an extraordinary remedy that "guard[s] against extreme malfunctions in the state criminal justice systems." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (internal quotation marks omitted). This case is the epitome of such an extreme judicial malfunction.

Petitioner Nathaniel Jackson was convicted of a capital offense and sentenced to death. But Jackson's sentencing proceeding was blatantly unconstitutional at its core due to the trial-court judge's bias and misconduct, as well as his exclusion at sentencing of relevant mitigating evidence. The prejudicial judicial bias and misconduct included numerous ex parte communications between the judge and prosecutor regarding substantive sentencing issues and the ghost writing by the prosecutor of the judge's opinion sentencing Jackson to death. In state court, when this unethical conduct came to light, the Ohio appellate courts publicly reprimanded the trial judge and ordered him to conduct new sentencing proceedings: the judge was to "personally review and evaluate the appropriateness of the death penalty" and "prepare an entirely new sentencing entry."

On remand, Jackson moved to present three additional volumes of mitigating evidence. The trial judge denied the motion, and he orally resentenced Jackson based on the stale, ten-year-old mitigation record. A few hours after the resentencing hearing concluded, the judge issued a second opinion sentencing Jackson to death that was functionally identical to the original, corrupted opinion and contrary to the Ohio Court of Appeals' specific instructions on remand. Nevertheless, the Ohio appellate courts affirmed Jackson's sentence.

Jackson then filed a petition for a writ of habeas corpus in federal district court. The district court granted Jackson's petition on his claim that he was unconstitutionally denied the opportunity to present relevant mitigating evidence at his resentencing proceedings, but it denied Jackson's other claims, including that the trial judge was unconstitutionally biased. The warden

appeals the district court's habeas grant, and Jackson cross appeals regarding his judicial-bias and ineffective-assistance-of-counsel claims.

We affirm the district court in part and reverse in part. We first hold that Ohio's standard for assessing the potential for judicial bias is contrary to clearly established federal law as defined by the Supreme Court. And on de novo review, Jackson has demonstrated that the trial judge was unconstitutionally biased. Second, the Supreme Court has clearly established that when a trial court is determining whether to impose the death penalty, capital defendants have a right to present any and all relevant mitigating evidence supporting a sentence less than death, including at resentencing proceedings, and Ohio's failure to provide Jackson that right violated the Eighth Amendment. Therefore, we affirm the district court's issuance of a writ of habeas corpus on Jackson's mitigating-evidence claim, reverse the district court's denial of Jackson's habeas petition on his judicial-bias claim, and remand for further proceedings consistent with this opinion.

I.

Nathaniel Jackson and Donna Roberts conspired to kill Roberts's former husband, Robert Fingerhut. *See, e.g.*, *State v. Jackson*, 73 N.E.3d 414, 419 (Ohio 2016); *State v. Roberts*, 850 N.E.2d 1168, 1174–75 (Ohio 2006). In 2001, they executed their plan: Jackson broke into Fingerhut's home and fatally shot him. The couple left a conspicuous trail of letters and phone calls, which enabled their quick apprehension. In 2002, they were each separately indicted, tried, and convicted in Ohio state court of aggravated burglary, aggravated robbery, and aggravated murder with two death-penalty specifications—murder during an aggravated burglary and murder during an aggravated robbery.

At Jackson's and Roberts's mitigation hearings, the juries recommended that the court impose the death penalty.[1] The trial judge, Trumbull County Court of Common Pleas Judge

---

[1]Ohio death-penalty proceedings involve three phases: the guilt phase (trial and jury verdict); the mitigation (or penalty) phase (presentation of mitigating and aggravating evidence and jury makes a recommendation on death sentence); and the sentencing phase (if jury recommended death penalty, judge decides whether to impose the death penalty). *See* Ohio Rev. Code §§ 2929.03(B)–(D), (F). Some practitioners consider both the mitigation and sentencing phases as part of the overall "sentencing" proceedings. For this opinion, we use the term "sentencing proceedings" to encompass both the mitigation and sentencing phases.

John M. Stuard, followed those recommendations and imposed death sentences for both Jackson and Roberts. On direct appeal, the Ohio appellate courts affirmed Jackson's convictions and sentence and soon after denied his petition for post-conviction relief. *State v. Jackson*, 839 N.E.2d 362, 325 (Ohio 2006); *State v. Jackson*, 2006 WL 1459757, at *1 (Ohio Ct. App.), *appeal denied* 855 N.E.2d 1258 (Ohio 2006) (unpublished table decision).

However, in Roberts's direct appeal, the Ohio Supreme Court affirmed her convictions but vacated her death sentence due to Judge Stuard's ex parte use of the prosecutor in preparing Roberts's sentencing opinion. *Roberts*, 850 N.E.2d at 1172. At Roberts's sentencing hearing, her counsel noticed that the prosecutor "was looking at a document and appeared to be reading along with [Judge Stuard]." *Id.* at 1188. Roberts's counsel vehemently objected, and Judge Stuard conceded that he had engaged in ex parte communications with the prosecution in drafting the sentencing opinion—apparently, Judge Stuard had given notes to the prosecutor outlining the sentence to be imposed with supporting reasons and tasked the prosecutor with drafting the opinion and making revisions. This conduct plainly violated Ohio law's requirement in death-penalty cases that the trial court personally weigh the evidence and draft the sentencing opinion, Ohio Rev. Code § 2929.03(F), so the Ohio Supreme Court vacated Roberts's sentence and remanded for resentencing.

After Judge Stuard's conduct surfaced in Roberts's case, Jackson moved for new sentencing proceedings and asked the Ohio Supreme Court to disqualify Judge Stuard. Judge Stuard responded, conceding that he had engaged in the same ex parte communications with the prosecutor's office in drafting Jackson's sentencing opinion. *In re Disqualification of Stuard*, 863 N.E.2d 636, 637 (Ohio 2006) (mem.). Nevertheless, the single Ohio Supreme Court justice tasked with adjudicating the petition declined to disqualify Judge Stuard because, in his view, there was no record of hostility or bias toward either party. *Id.* at 638.

Jackson's motion for new sentencing proceedings remained pending for nearly three years. Only after Jackson initiated a mandamus action to compel a ruling; Jackson again sought Judge Stuard's disqualification; and the Ohio Supreme Court publicly reprimanded Judge Stuard for violating two canons of Ohio's code of judicial conduct based on his ex parte communications with the prosecution, *Disciplinary Couns. v. Stuard*, 901 N.E.2d 788, 792 (Ohio

2009), did Judge Stuard rule on the motion—he denied Jackson a new sentencing hearing.  The Ohio Court of Appeals reversed.  *State v. Jackson*, 941 N.E.2d 1221, 1225–26 (Ohio Ct. App. 2010).  Because Judge Stuard's improper conduct was the same in both cases, the court afforded Jackson "the same relief" it gave to Roberts, and on remand for resentencing proceedings, it ordered Judge Stuard to "personally review and evaluate the appropriateness of the death penalty, prepare an entirely new sentencing entry[,] . . . and conduct whatever other proceedings are required by law and consistent with this opinion."  *Id.* at 1226.

Nearly two years later, in 2012, Judge Stuard denied a motion for his recusal and resentenced Jackson.  During the resentencing hearing, Judge Stuard permitted Jackson to offer an allocution, in which Jackson described his good behavior on death row.  However, Judge Stuard denied Jackson's motion to introduce three volumes of mitigating evidence that he had not proffered at his first sentencing proceedings.  This evidence included statistics on Ohio death-row inmates, affidavits from Jackson's family members, his own affidavit expressing dissatisfaction with his trial counsel, psychological information showing his intellectual disabilities, his school records, and his criminal history.  The court therefore relied on the ten-year-old record made at Jackson's mitigation hearing.

Judge Stuard again imposed the death penalty.  He issued the second sentencing opinion—which largely mirrored the original opinion—mere hours after the resentencing hearing.  Apart from adding some introductory paragraphs explaining the additional procedural history, making minor typographical and grammatical changes, and rewriting a few paragraphs describing the trial evidence, the second sentencing opinion was "almost identical" to the first.  *Jackson*, 73 N.E.3d at 433.  *Compare*, 2002 Opinion, R. 47-6, PageID 10070–81, *with* 2012 Opinion, R. 47-17, PageID 13477–93.  Indeed, it did not even mention Jackson's new allocution or request to admit additional mitigating evidence.

The Ohio Supreme Court affirmed Jackson's second death sentence.  *Jackson*, 73 N.E.3d at 419.  Relevant here, the court rejected Jackson's claims that Judge Stuard was biased, that Judge Stuard erred in denying him the opportunity to present additional mitigating evidence, and that his attorneys at the penalty-phase stage were ineffective.  *Id.* at 423–25, 427–30, 437–39.

Meanwhile, Jackson filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Northern District of Ohio, raising 37 grounds for relief.  The district court granted his petition on one ground, holding that the Ohio state courts violated Jackson's Eighth Amendment right to present mitigating evidence at his capital resentencing proceedings and that the Ohio Supreme Court's decision affirming his death sentence was an unreasonable application of and contrary to clearly established Supreme Court precedent.  *Jackson v. Houk*, 2021 WL 698590, at *8–11 (N.D. Ohio Feb. 23, 2021).  It otherwise rejected his claims and denied him a certificate of appealability.

The warden timely appealed to this court, and Jackson cross appealed, requesting a certificate of appealability on additional grounds for relief.  We granted that application in part, adding two more claims for our review.  Thus, these consolidated appeals present three claims: (1) whether Judge Stuard was unconstitutionally biased in violation of the Fourteenth Amendment; (2) whether Jackson was denied the opportunity to present additional relevant mitigating evidence at his second sentencing proceedings in violation of the Eighth Amendment; and (3) whether Jackson's trial counsel were ineffective at the penalty-phase stage in violation of the Sixth Amendment.

II.

In habeas proceedings, we review a district court's legal conclusions de novo and its factual findings for clear error.  *Upshaw v. Stephenson*, 97 F.4th 365, 370 (6th Cir. 2024).  Our review of the state court's decision, however, is more deferential.  *See id.*  Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts shall not grant a writ of habeas corpus for a claim adjudicated on the merits in state-court proceedings unless the adjudication of the claim either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Tolliver v. Sheets*, 594 F.3d 900, 915–16 (6th Cir. 2010) (quoting 28 U.S.C. § 2254(d)).

A state-court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). And a state-court decision employs an "unreasonable application" of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). In reviewing whether a state-court decision was "contrary to" or an "unreasonable application" of Supreme Court precedent, "we look to the last reasoned state court decision" that adjudicated the relevant claim on the merits. *Mack v. Bradshaw*, 88 F.4th 1147, 1154 (6th Cir. 2023). Only if a petitioner can surpass AEDPA's "daunting standard," *id.*, do we apply de novo review to his claims, *Rice v. White*, 660 F.3d 242, 251–52 (6th Cir. 2011) (unreasonable-application prong); *Issa v. Bradshaw*, 904 F.3d 446, 453 (6th Cir. 2018) (contrary-to prong). Under such review, "no deference is due" to the state court's faulty decision. *See Panetti v. Quarterman*, 551 U.S. 930, 948 (2007).

III.

Jackson first asserts that he was denied a fair tribunal, in violation of the Fourteenth Amendment's Due Process Clause, because Judge Stuard was unconstitutionally biased against him. And he contends that the Ohio Supreme Court, in the last reasoned state-court decision to address this claim, applied a standard contrary to the federal standard for evaluating judicial bias, so we should review this claim de novo. We agree.

A.

The right to a fair, unbiased judge in criminal cases is undoubtedly clearly established. *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) ("It is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" (quoting *In re Murchison*, 349 U.S. 133, 136 (1955) (alteration in original)). "[T]he Due Process Clause clearly requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (internal

quotation marks and citations omitted). Judicial bias, which "is a deep-seated favoritism or antagonism that makes fair judgment impossible," is "constitutionally unacceptable." *Coley v. Bagley*, 706 F.3d 741, 750 (6th Cir. 2013) (citing *Mayberry v. Pennsylvania*, 400 U.S. 455, 465–66 (1971); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

The standard for assessing the risk of judicial bias under federal law is also clearly established. This standard is an "objective" one, requiring recusal when "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton*, 556 U.S. at 872 (quoting *Withrow*, 421 U.S. at 47). To conduct this inquiry, "[t]he Court asks not whether the judge is actually, subjectively biased, but whether the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Id.* at 881 (internal quotation marks omitted). Because a finding of judicial bias is a structural defect that affects the entire proceeding, it is not subject to a harmless-error analysis. *Cf. Arizona v. Fulminante*, 499 U.S. 279, 309 (1991); *see Railey v. Webb*, 540 F.3d 393, 399 (6th Cir. 2008).

## B.

On direct appeal from his resentencing proceedings, Jackson asserted that "he was denied a fair and impartial trial judge on resentencing." *Jackson*, 73 N.E.3d at 423. Based on Judge Stuard's improper ex parte communications and collaboration with the prosecutor; refusal to recuse himself; statements on the record expressing disagreement with the necessity of resentencing; refusal to consider Jackson's mitigating evidence at resentencing; and issuance of a second sentencing opinion mirroring the original, tainted one mere hours after the resentencing hearing, Jackson claimed that Judge Stuard was biased against him in violation of the Fourteenth Amendment. *Id.* at 423–25, 433. Assessing this claim under Ohio law's subjective standard for judicial bias, the Ohio Supreme Court rejected Jackson's argument. *Id.* at 423, 425. Because Jackson had "fail[ed] to demonstrate that Judge Stuard had actual bias and acted with 'ill will' or formed 'a fixed anticipatory judgment' against him," the Ohio Supreme Court denied relief on

this ground.  *Id.* at 425 (quoting *State ex rel. Pratt v. Weygandt*, 132 N.E.2d 191, 192 (Ohio 1956)).**2**

We hold that Ohio law's subjective judicial-bias standard is contrary to clearly established federal law.  *Compare Pratt*, 132 N.E.2d at 195 (establishing a subjective standard for judicial bias), *with Caperton*, 556 U.S. at 881 (holding that the judicial-bias inquiry is objective, not subjective).  *See also Rippo v. Baker*, 580 U.S. 285, 286–87 (2017) (per curiam) (vacating a state court's judgment finding no bias because the state court "applied the wrong legal standard").  Ohio's "actual" judicial-bias standard predates the Supreme Court's objective judicial-bias standard by over 50 years, and the Ohio Supreme Court erred in using this outdated standard when assessing Jackson's judicial-bias claim.  Because the state court "applie[d] a rule different from the governing law set forth in [the Supreme Court's] cases," that decision is "contrary to" clearly established federal law under § 2254(d)(1).  *Bell*, 535 U.S. at 694.  Thus, we review the merits of Jackson's judicial-bias claim de novo.  *Issa*, 904 F.3d at 453.

Judge Stuard's most egregious conduct was his facilitation of and participation in multiple ex parte communications—and in turn, ethical violations—related to Jackson's sentencing opinion.  *Disciplinary Couns.*, 901 N.E.2d at 791.  Without informing Jackson, Judge Stuard approached the prosecutor to ghost write Jackson's sentencing opinion.  After consulting Judge Stuard's incomplete notes, the prosecutor used his discretion to create a draft opinion. Judge Stuard reviewed the prosecutor's draft, edited it, and told the prosecutor "to make the corrections."  *Id.* at 790.  The prosecutor did so—but he also incorporated another prosecutor's "editorial suggestions."  *Id.*  That version eventually became Judge Stuard's first opinion ordering Jackson's execution.

---

**2**The warden contends that Jackson procedurally defaulted his judicial-bias claim, arguing that Jackson failed to fairly present it to the state courts.  One way a habeas petitioner procedurally defaults a claim is by "failing to raise a claim in state court"—i.e., that he did not "fairly present[]" the claim to the state court—"and pursue that claim through the state's ordinary appellate review procedures."  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (internal quotation marks omitted).  "To fairly present a claim to a state court[,] a petitioner must assert both the legal and factual basis for his or her claim."  *Id.* (emphasis omitted).  Jackson did just that:  he claimed that "he was denied a fair and impartial trial judge on resentencing" because "Judge Stuard's bias denied him due process in violation of the Fourteenth Amendment."  *Jackson*, 73 N.E.3d at 423, 425.  And he supported this argument by highlighting the factual circumstances (ex parte communications, denying Jackson a resentencing, disciplinary actions taken against Judge Stuard, refusing to admit wrongdoing, etc.) that we rely on here.  Thus, this claim is not procedurally defaulted.

These ex parte communications were neither innocent nor harmless.  Judge Stuard did not have an innocuous conversation with the prosecutor in a public setting, *Getsy v. Mitchell*, 495 F.3d 295, 309–12 (6th Cir. 2007) (en banc), nor did he ask the prosecutor to draft a ministerial order that benefited Jackson, *Whisenhant v. Allen*, 556 F.3d 1198, 1208–10 (11th Cir. 2009).  Instead, Judge Stuard secretly recruited the prosecutor to draft the entirety of an opinion sentencing Jackson *to death*:  he left the prosecutor to turn his two pages of incomplete, handwritten notes into a twelve-page opinion outlining the facts and procedural history, weighing the aggravating and mitigating factors (while characterizing Jackson's mitigating evidence as "self-serving," "not convincing," and "lack[ing] sincerity"), and ultimately imposing the death penalty.  Although "ex parte contact does not, in itself, evidence any kind of bias," it is hard to imagine a more "extreme" case of bias from ex parte contact than this one.  *Getsy*, 495 F.3d at 311 (citations omitted).

And Judge Stuard's conduct evidencing bias did not stop there.  After his improper ex parte contacts came to light, he refused to accept responsibility, stating that he did "nothing wrong."  During his disciplinary proceedings, Judge Stuard downplayed his conduct by claiming that the prosecution was simply performing a ministerial task and purportedly gained no tactical advantage from writing the opinion.  The Disciplinary Counsel and Ohio Supreme Court disagreed:  they found that Judge Stuard violated two ethical canons in Ohio's judicial code of conduct and publicly reprimanded him for doing so.  *Disciplinary Couns.*, 901 N.E.2d at 791–92.

Despite these findings—and years after Jackson had moved for relief—Judge Stuard refused to recuse himself or grant Jackson a new sentencing hearing.  Instead, he had to be directed by the Ohio Court of Appeals to afford Jackson a new hearing and "personally" draft a new, untainted opinion "evaluat[ing] the appropriateness of the death penalty."  *Jackson*, 941 N.E.2d at 1226.  Two years later—to ensure that he disposed of the case before it would be transferred to another judge upon his retirement—Judge Stuard held Jackson's resentencing proceeding (where, as discussed below, he improperly denied Jackson the opportunity to present mitigating evidence).  And at that hearing, he took the time to express his disagreement for the need to hold a resentencing hearing, claiming that the higher courts "misunderstood what occurred" but that he was nonetheless required to abide by their rulings.

That very afternoon, Judge Stuard issued his second sentencing opinion. Functionally, the second opinion was "almost identical" to the original. *Jackson*, 73 N.E.3d at 433. Even though Judge Stuard was directed to "personally review and evaluate the appropriateness of the death penalty" and "prepare *an entirely new sentencing entry*," *Jackson*, 941 N.E.2d at 1226 (emphasis added), he declined to scrap the corrupted opinion and instead marginally modified it to include the new procedural posture among other minor changes. He did so because he viewed the need for the hearing "in a very narrow light": "to conduct this re-sentencing based on a review of the evidence that was presented during the trial" and do nothing more. Indeed, the new sentencing opinion failed to mention anything that occurred at the resentencing hearing.

Considering the totality of the circumstances, we conclude that the objective risk of Judge Stuard's bias against Jackson was "too high to be constitutionally tolerable." *Caperton*, 556 U.S. at 872 (citation omitted). Unbeknownst to Jackson, Judge Stuard enlisted the prosecutor to draft his opinion sentencing Jackson to death. After his unethical behavior was exposed, he delayed Jackson's resentencing; declined to accept responsibility for his impropriety; and refused to issue an untainted, personally crafted sentencing opinion. Judge Stuard could impose the death penalty, but he could not be bothered to draft an opinion explaining why. These actions show a "deep-seated" favoritism toward the prosecution and antagonism toward Jackson, "mak[ing] fair judgment impossible." *Coley*, 706 F.3d at 750. Jackson must demonstrate only an objective risk of bias, and he has done at least that.

Further, by asking the prosecutor to draft the original sentencing opinion for him, Judge Stuard essentially allowed the prosecution to "act[] as both accuser and judge in [Jackson's] case." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). True, Judge Stuard informed the prosecutor he would impose the death penalty, but the two pages of notes he provided to the prosecutor (which were "not very detailed") can hardly provide support for the harshest sentence tolerated in the American justice system. Instead, the prosecutor had significant discretion in explaining why the aggravating circumstances outweighed Jackson's purportedly insincere and unconvincing mitigating evidence. Judge Stuard's decision to involve the prosecution in this critical decision in Jackson's case and his failure to cure the effects of that egregious error, even

after being ordered to do so, suggests, at minimum, a risk of bias in favor of the prosecution and against Jackson.  *Cf. id.*; *Bracy*, 520 U.S. at 905.

The warden's arguments to the contrary are unconvincing.  The warden focuses on the "few narrow circumstances" in which the Supreme Court has found an unconstitutional risk of bias, and he claims that Jackson's case is too dissimilar.  *See Tumey v. Ohio*, 273 U.S. 510, 523 (1927); *Caperton*, 556 U.S. at 884; *Mayberry*, 400 U.S. at 466; *Murchison*, 349 U.S. at 136; *Williams*, 579 U.S. at 14.  But given our de novo review, *Issa*, 904 F.3d at 453, we need not confine our analysis to these cases.  We instead analyze Judge Stuard's conduct under a broader lens.**3**  *See Caperton*, 556 U.S. at 880 ("[D]isqualifying criteria cannot be defined with precision. Circumstances and relationships must be considered." (internal quotation marks omitted)).  And even if this claim was not subject to de novo review, the "general standard" for establishing a claim of unconstitutional judicial bias is clearly established.  *Marshall v. Rodgers*, 569 U.S. 58, 62 (2013) (citation omitted); *see also Caperton*, 556 U.S. at 872.  For the reasons we have articulated, the risk of Judge Stuard's bias was too high to be constitutionally tolerable.

In sum, Judge Stuard failed to act as a fair tribunal, denying Jackson his Fourteenth Amendment right to an unbiased, neutral arbiter.  As such, Jackson is entitled to a writ of habeas corpus on his judicial-bias claim.

IV.

Next, Jackson claims that the trial court's exclusion of additional mitigating evidence during his resentencing proceedings violated his Eighth Amendment right to present all relevant mitigating evidence that might provide a basis for imposing a sentence less than death.  And he contends that the Ohio Supreme Court's rejection of this claim was an unreasonable application of and contrary to the rights clearly established in *Lockett v. Ohio*, 438 U.S. 586 (1978) (plurality opinion), *Eddings v. Oklahoma*, 455 U.S. 104 (1982), *Skipper v. South Carolina*, 476 U.S. 1 (1986), and their progeny.  We agree, as we have previously held that these cases clearly

---

**3**Moreover, the warden disaggregates Jackson's claimed instances of judicial bias.  But when analyzing the risk of judicial bias, we look at "all the circumstances" collectively.  *Caperton*, 556 U.S. at 872; *see also Coley*, 706 F.3d at 750 (considering whether the defendant's arguments "cumulatively establish[ed] the requisite probability of actual bias").

established that "a defendant be 'permitted to present any and all relevant mitigating evidence that is available,' [and] . . . at resentencing, a trial court must consider any new evidence that the defendant has developed since the initial sentencing hearing." *Davis v. Coyle*, 475 F.3d 761, 774 (6th Cir. 2007) (quoting *Skipper*, 476 U.S. at 8). That holding was correct then, and today we reiterate that *Lockett*, *Eddings*, and *Skipper* require capital sentencing courts to consider any and all relevant mitigating evidence presented at the time of sentencing, with no exception for cases where prior sentencing proceedings had been held. For the following reasons, the district court correctly concluded that Jackson is entitled to relief on this claim.

A.

As in *Davis*, we first outline the clearly established Supreme Court precedent confirming Jackson's right to present all relevant mitigating evidence at his death-penalty sentencing proceedings. To comply with the Eighth Amendment, the death penalty may "not be imposed under sentencing procedures that create[] a substantial risk that it would be inflicted in an arbitrary and capricious manner." *Gregg v. Georgia*, 428 U.S. 153, 188 (1976) (plurality opinion); *see also generally Furman v. Georgia*, 408 U.S. 238 (1972). The Eighth Amendment therefore requires "individualized sentencing determinations in death penalty cases," *Stringer v. Black*, 503 U.S. 222, 230 (1992), meaning the sentencing court must consider "the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death," *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) (plurality opinion).

Before *Lockett*, the Supreme Court had opined that judges in capital sentencings are "authorized, if not required, to consider all of the mitigating and aggravating circumstances involved in the crime." *Williams v. Oklahoma*, 358 U.S. 576, 585 (1959). In *Lockett*, the Supreme Court squarely endorsed this rule: "the sentencer, in all but the rarest kind of capital case, [must] not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." 438 U.S. at 604 (footnotes omitted). In doing so, the Court reaffirmed the well-established principle that "an individualized decision is essential in capital cases" because the death penalty "is so profoundly different from all other

penalties" and "[t]he need for treating each defendant in a capital case with that degree of respect due [to] the uniqueness of the individual is far more important than in noncapital cases." *Id.* at 605. Accordingly, because the *Lockett* defendant's sentencing court considered only a "limited range of mitigating circumstances" when determining whether to impose the death penalty, the Supreme Court remanded for a resentencing, where the sentencing court was to conduct an individualized consideration of all the defendant's mitigating evidence. *Id.* at 606–09.

The Supreme Court then extended *Lockett* in *Eddings*, where the Court held unconstitutional a capital sentence in which the sentencing judge excluded evidence of the defendant's family history. *Eddings*, 455 U.S. at 113. Noting that the exclusion of such evidence violated *Lockett*, the *Eddings* Court held that, "[j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence." *Id.* at 113–14. Of course, sentencing courts may assign the appropriate weight to mitigating evidence, *id.* at 114–15, and they retain their "traditional authority . . . to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense," *Lockett*, 438 U.S. at 604 n.12. But post-*Eddings*, "they may not give [mitigating evidence] no weight by excluding such evidence from their consideration." 455 U.S. at 115. As such, the *Eddings* Court vacated the defendant's death sentence and remanded for resentencing proceedings for the state court to consider "all relevant mitigating evidence," including evidence regarding the defendant's rough upbringing and family history. *Id.* at 117.

Then in *Skipper*, recognizing once more that "the sentencer may not refuse to consider or be precluded from considering any relevant mitigating evidence," the Supreme Court again reversed a death sentence. 476 U.S. at 4 (internal quotation marks omitted). There, the trial court disregarded *Eddings* by refusing to allow the defendant to present testimony from several witnesses that the defendant "made a good adjustment" during his time in jail awaiting trial. *Id.* at 3–4. While the state courts prohibited the defendant from presenting this evidence because it was relevant only to his "future adaptability to prison life," which the trial court deemed "not a[t] issue in this case," *id.* at 3 (emphasis omitted), the Supreme Court disagreed, holding that such evidence was "relevant evidence in mitigation of punishment" because it might have served "as a

basis for a sentence less than death," *id.* at 4 (citation omitted). In other words, even post-offense conduct may be considered mitigating, and it therefore "may not be excluded from the sentencer's consideration" if it shows that "the defendant would not pose a danger if spared (but incarcerated)." *Id.* at 5. Accordingly, the Supreme Court remanded for resentencing, at which the defendant was "permitted to present any and all relevant mitigating evidence that is available." *Id.* at 8.

The Supreme Court has repeated these clearly established principles time and time again. *See, e.g.*, *Hitchcock v. Dugger*, 481 U.S. 393, 398–99 (1987) ("[I]t could not be clearer that the advisory jury was instructed not to consider, and the sentencing judge refused to consider, evidence of nonstatutory mitigating circumstances, and that the proceedings therefore did not comport with the requirements of [*Skipper*, *Eddings*, and *Lockett*]."); *Kansas v. Marsh*, 548 U.S. 163, 175 (2006) ("In aggregate, our precedents confer upon [capital] defendants the right to present sentencers with information relevant to the sentencing decision and oblige sentencers to consider that information in determining the appropriate sentence."); *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 246 (2007) ("[The Supreme Court has] firmly established that sentencing [courts] must be able to give meaningful consideration and effect to all mitigating evidence that might provide a basis for refusing to impose the death penalty on a particular individual, notwithstanding the severity of his crime or his potential to commit similar offenses in the future.").

Notably, we have applied *Lockett*, *Eddings*, and *Skipper* to resentencing proceedings that took place after the defendant's initial opportunity to present mitigating evidence. *See Davis*, 475 F.3d at 774 ("*Skipper* requires that, at resentencing, a trial court must consider any new evidence that the defendant has developed since the initial sentencing hearing." (citation omitted)). Today, we reinforce *Davis*'s correct analysis and follow its holding—which remains consistent with clearly established Supreme Court precedent and by which we are bound. *See, e.g.*, *Rodgers*, 569 U.S. at 64; *Smith v. Stegall*, 385 F.3d 993, 998 (6th Cir. 2004); *Tolliver*, 594 F.3d at 916 n.6; *Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003).

Therefore, we hold that *Lockett*, *Eddings*, *Skipper*, and their progeny clearly established that capital defendants have a right to present during their sentencing proceedings "any and all

relevant mitigating evidence that is available." *Skipper*, 476 U.S. at 8; *see also Stegall*, 385 F.3d at 998 (explaining that, while the federal circuit courts cannot create clearly established law under AEDPA, we may "determine whether a legal principle or right ha[s] been clearly established by the Supreme Court"). This principle is broad because "[w]hen the choice is between life and death," the Eighth and Fourteenth Amendments require the sentencing court to consider the "defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett*, 438 U.S. at 604–05.

B.

In light of this clearly established federal law, the question then becomes whether the Ohio Supreme Court's decision affirming the trial court's exclusion of additional mitigating evidence at Jackson's resentencing was an unreasonable application of, or contrary to, this clearly established law. Unquestionably, the answer is yes.

Start with the unreasonable-application prong of § 2254(d)(1): the Ohio Supreme Court "identifie[d] the correct governing legal principle . . . but unreasonably applie[d] that principle to the facts of [Jackson's] case." *Taylor*, 529 U.S. at 413. Despite correctly identifying *Lockett*, *Eddings*, and *Skipper*, the Ohio Supreme Court reasoned that Jackson could not present additional mitigating evidence during his resentencing proceedings because "[t]he United States Supreme Court has not determined that a capital defendant has a categorical constitutional right to introduce new mitigation evidence that is discovered after a sentencing hearing in which the defendant was given an opportunity to present all the mitigation evidence he desired." *Jackson*, 73 N.E.3d at 427. But the Supreme Court has held that trial courts may not refuse to consider any relevant mitigating evidence in death-penalty cases, *Eddings*, 455 U.S. at 115, and in turn, that capital defendants may present "any and all relevant mitigating evidence that is available" at the time the court is considering whether to impose the death penalty, *see Skipper*, 476 U.S. at 5, 8. Here, the trial court was considering whether to impose the death penalty at Jackson's resentencing, yet it prevented him from presenting relevant mitigating evidence. *Jackson*, 941 N.E.2d at 1226. The Ohio Supreme Court's attempt at narrowing the Supreme Court's purposely broad rule is unavailing and violates the principle clearly defined by *Lockett*, *Eddings*, and *Skipper*. Thus, the Ohio Supreme Court unreasonably applied clearly established Supreme Court

precedent by prohibiting Jackson from presenting all available, relevant mitigating evidence at his resentencing proceedings.

For many of the same reasons, the Ohio Supreme Court's decision was also contrary to clearly established Supreme Court precedent. Recall that a state-court decision is "contrary to clearly established federal law" if, for example, "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law." *Carter v. Mitchell*, 829 F.3d 455, 468 (6th Cir. 2016) (alteration in original) (quoting *Taylor*, 529 U.S. at 405).**4** Here, the relevant question of law—whether the trial court must consider all relevant mitigating evidence when determining a sentence in capital proceedings—is one that the Supreme Court has squarely answered. Yet the Ohio Supreme Court refused to follow the Supreme Court's answer to that question. The Ohio Supreme Court unreasonably narrowed the *Lockett-Eddings-Skipper* rule so much that it reached a conclusion opposite to that of the Supreme Court. *Compare Jackson*, 73 N.E.3d at 430 ("No binding authority holds that the Eighth Amendment requires a resentencing judge to accept and consider new mitigation evidence at a limited resentencing when the defendant had the unrestricted opportunity to present mitigating evidence during his original mitigation hearing."), *with Eddings*, 455 U.S. at 114 ("[T]he sentencer [may not] refuse to consider . . . any relevant mitigating evidence."). Therefore, we also hold that the Ohio Supreme Court applied a standard contrary to that of the Supreme Court by categorically excluding Jackson's proffered mitigating evidence at his second capital sentencing proceedings.

The warden resists our conclusions, arguing that the Supreme Court has never considered "whether and when a defendant may introduce new mitigating evidence in 'a proceeding on remand for the limited purpose of correcting an error that occurred *after* the defendant had had a full, unlimited opportunity to present mitigating evidence to the sentencer.'" But this argument fails to recognize that a "lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law," given that "a general standard" from

---

**4**Because we find that the Ohio Supreme Court's decision was contrary to clearly established Supreme Court precedent on a question of law, we need not consider Jackson's alternative argument that this decision was also contrary to such precedent by "confront[ing] facts that are materially indistinguishable from [the] relevant Supreme Court precedent and arriv[ing] at an opposite result." *Carter*, 829 F.3d at 468 (internal quotation marks omitted).

relevant Supreme Court cases can "supply such law." *Rodgers*, 569 U.S. at 62 (citation omitted). The general standard from *Lockett*, *Eddings*, and *Skipper* is that, when choosing a capital defendant's sentence, "the sentencer may not refuse to consider or be precluded from considering 'any relevant mitigating evidence.'" *Skipper*, 476 U.S. at 4 (quoting *Eddings*, 455 U.S. at 114). And, given that Judge Stuard was instructed to "evaluate the appropriateness of the death penalty" on remand, *Jackson*, 941 N.E.2d at 1226, it is immaterial that the relevant proceeding was a *re*sentencing or that much of Jackson's proffered mitigating evidence was available (though not compiled or discovered) at the time of his first sentencing. *See Davis*, 475 F.3d at 774. The bottom line is that Judge Stuard was again tasked with deciding whether to impose the death penalty on Jackson, so *Lockett*, *Eddings*, and *Skipper*'s general, clearly established standard applied to Jackson's resentencing.

In sum, the Ohio Supreme Court issued an opinion that was an unreasonable application of and contrary to *Lockett* and its progeny, which require sentencing courts, when deciding whether to impose the death penalty, to consider all relevant mitigating evidence the defendant presents during his sentencing proceedings, regardless of when the proceedings take place, when the mitigating evidence was discovered, or whether prior sentencing proceedings had been held. We therefore analyze Jackson's mitigating-evidence claim de novo. *See Rice*, 660 F.3d at 251–52; *Issa*, 904 F.3d at 453.

## C.

Considering this clearly established Supreme Court precedent, our de novo review is simple. Pursuant to the Eighth and Fourteenth Amendments, *Lockett*, *Eddings*, and *Skipper* entitled Jackson to present "any and all" relevant mitigating evidence he had compiled at the time of his resentencing proceedings, yet the trial court prevented him from doing so. The fact that Jackson had already been sentenced once is irrelevant. Jackson was not subject to any sentence, so Judge Stuard was tasked with determining whether the death penalty or life in prison was the appropriate sentence, given all the relevant circumstances—both aggravating and mitigating. But Judge Stuard refused to allow Jackson to present all the relevant mitigating circumstances, meaning he violated Jackson's Eighth Amendment rights—a violation that the

Ohio appellate courts affirmed.  For these reasons, Jackson is entitled to a writ of habeas corpus on his mitigating-evidence claim.

## V.

Finally, Jackson claims that his attorneys at the mitigation-phase stage provided ineffective assistance of counsel.  However, Jackson asks us to pretermit consideration of this claim if we grant his petition on any other grounds.  And at oral argument, the warden agreed with that proposed procedure.  Given our conclusions concerning Jackson's other claims, and pursuant to Jackson's unopposed request, we decline to address Jackson's ineffective-assistance claim.  *See, e.g.*, *Thomas v. Westbrooks*, 849 F.3d 659, 667 (6th Cir. 2017) (pretermitting consideration of the petitioner's additional claims after granting him habeas relief on one claim); *Davis*, 475 F.3d at 775 ("Because we must remand the case for yet another sentencing hearing, we need not address in detail each of the remaining allegations of constitutional error raised before this court by Davis.").

## VI.

For these reasons, we affirm the district court's grant of Jackson's petition for a writ of habeas corpus under 28 U.S.C. § 2254 for his mitigating-evidence claim, reverse the denial of his petition on his judicial-bias claim, and decline to address his ineffective-assistance-of-counsel claim.  We remand to the district court for further proceedings consistent with this opinion.