**Nos. 21-3207 & 21-3280**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

## DEATH PENALTY CASE

| | | |
|---|---|---|
| NATHANIEL JACKSON, | : | On Appeal from the |
|     Appellee/Cross-Appellant, | : | United States District Court |
| v. | : | for the Northern District of Ohio |
| | : | Eastern Division |
| BILL COOL, WARDEN, | : | |
|     Appellant/Cross-Appellee. | : | District Court Case No. |
| | : | 4:07-cv-0880 |
| | : | |

---

## MOTION TO STAY THE MANDATE

---

DAVE YOST
Attorney General of Ohio

T. ELLIOT GAISER*
Ohio Solicitor General
  *Counsel of Record*
MICHAEL J. HENDERSHOT
Chief Deputy Solicitor General
JANA M. BOSCH
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614-466-8980
thomas.gaiser@ohioago.gov

*Counsel for Warden*

The Warden plans to petition the Supreme Court for a writ of certiorari in this case. The deadline for that anticipated petition is December 4, 2024. This case presents a substantial question of federal law, and good cause exists to stay the mandate while the Warden seeks further review. Thus, under Federal Rule of Appellate Procedure 41(d), the Warden moves this Court to stay its mandate pending the resolution of the Warden's certiorari petition. This motion automatically stays the mandate until the Court resolves the motion. *See* Fed. R. App. P. 41(b), (d)(1).

## I.     This case presents a substantial question of federal law.

To warrant a stay of the mandate, the movant "must show that" a petition for certiorari "would present a substantial question." Fed. R. App. P. 41(d)(1). In determining whether a substantial question exists, courts ask whether there is "a reasonable probability that four Justices will vote to grant certiorari and a reasonable possibility that five Justices will vote to reverse the judgment of this court." *Books v. City of Elkhart*, 239 F.3d 826, 828 (7th Cir. 2001) (Ripple, J., in chambers).

This case presents a substantial question: whether Supreme Court precedent requires lower courts to restart the mitigation phase of a death penalty case any time a reviewing court remands for correction of any error. This Court held that the answer is yes. Even though Jackson's mitigation hearing was untainted by error, it held that the State was required to redo the mitigation hearing during a remand for

correction of error in the sentencing entry (ex parte communications asking the prosecutor to draft the entry).

That holding deepens a split on the question. Like the Sixth Circuit here, Idaho and the Ninth Circuit have held that a remand for any error triggers an all-new mitigation hearing. The Idaho Supreme Court has held that, on remand for failing to announce the sentence in the defendant's presence, the Supreme Court cases *Lockett*, *Eddings*, and *Skipper* require the sentencing court to entertain new evidence even though the defendant had already had a full and fair chance at mitigation. *Sivak v. State*, 112 Idaho 197, 200 (1986) (citing *Lockett v. Ohio*, 438 U.S. 586 (1978), *Eddings v. Oklahoma*, 455 U.S. 104 (1982), and *Skipper v. South Carolina*, 476 U.S. 1 (1986)). And when faced with the same circumstance, the Ninth Circuit adopted that reasoning and held that, "although [the defendant] was allowed to present any and all mitigating evidence at his initial sentencing hearing," under the *Skipper* line of cases, he "must be allowed another opportunity to do so" on remand. *Creech v. Arave*, 947 F.2d 873, 881–82 (9th Cir. 1991), *rev'd in part on other grounds*, 507 U.S. 463 (1993). (The en banc petition stated that the Attorney General was aware of no other circuit to address this question. En Banc Pet. at 2. That statement overlooked *Creech*.)

On the other side, South Dakota and Ohio have held that a defendant has no "categorical constitutional right to introduce new mitigation evidence discovered after a sentencing hearing in which the defendant was given the opportunity to present all mitigation evidence he desired." *State v. Berget*, 2014 S.D. 61, ¶32. Ohio's opposition to the mitigation-redo position predated Jackson's case in state court and lives on to this day. *See State v. Chinn*, 85 Ohio St. 3d 548, 565 (1999); *State v. Goff*, 154 Ohio St. 3d 218, 221–23 (2018). In *Chinn*, the Ohio appeals court remanded for an error in the judge's independent evaluation and imposition of the sentence, which happens after the mitigation phase and jury recommendation are finished. 85 Ohio St. 3d at 562–63. It held that, on remand, the "trial court was required to proceed from the point at which the error occurred," not back up to the mitigation phase. *Id.* at 563. And in *Goff*, the "underlying error" was "the trial court's failure to provide Goff an opportunity to allocute at his initial sentencing hearing" as required by state rule. 154 Ohio St. 3d at 222 (citing Ohio Crim. R. 32(A)(1)). On remand, the court held, "the trial court had to proceed from the point of providing Goff an opportunity to allocute, which occurred after his opportunity to present mitigation evidence," meaning that there was no reason to rewind to the mitigation phase and do it over again. *Id.* at 223. An Alabama intermediate court has

also adopted the views on this side of the split. *Keaton v. State*, 375 So. 3d 44, 146 (Ala. Crim. App. 2021).

The split between the Ohio Supreme Court and the Sixth Circuit especially exacerbates the conflict. Binding Ohio law dictates that a new mitigation hearing is not necessary when a case is remanded to fix an unrelated error. And lower Ohio courts "may not extend or vary the mandate given" in a limited remand. *State ex rel. Mather v. Oda*, 174 Ohio St. 3d 526, 530 (2023) (quotation omitted). Meanwhile, the Sixth Circuit's precedent does not bind Ohio Courts, *Lopez v. Smith*, 574 U.S. 1, 7 (2014) (per curiam), but it does bind future Sixth Circuit panels, 6th Cir. R. 32.1(b). This squeeze locks Ohio litigants into hamster-wheel proceedings where lower Ohio courts have no power to conduct the mitigation do-overs that the federal courts will later hold were required. The only solution is for the Supreme Court of the United States to resolve the conflict.

Indeed, courts across the country have long used limited remands in death penalty cases without detecting any constitutional problem—including some States in circuits that now would prohibit the practice. *See, e.g.*, *People v. Brown*, 45 Cal. 3d 1247, 1251 (1988); *Lucas v. State*, 613 So. 2d 408, 409 (Fla. 1992) (per curiam); *State v. Schackart*, 175 Ariz. 494, 499 (1993); *People v. Kinkead*, 168 Ill. 2d 394, 415 (1995); *Hoskins v. State*, 702 So. 2d 202, 211 (Fla. 1997) (per curiam); *Echols v. State*, 344

Ark. 513, 519 (2001); *Lambert v. State*, 2003 OK CR 11, ¶6; *State v. Williams*, 921 So. 2d 105, 106 (La. 2006) (per curiam); *State v. Bowen*, 352 Or. 109, 115–16 (2012); *People v. Mataele*, 13 Cal. 5th 372, 437 (2022).  The holdings of the Sixth and Ninth Circuits thus threaten these widespread practices even in States where an explicit split has yet to materialize.

If more circuits adopt the Sixth Circuit's current view, it will be a move in the wrong direction.  For one, it would condone the Sixth Circuit's extension of Supreme Court precedent in a habeas case, which is impermissible.  *White v. Woodall*, 572 U.S. 415, 426 (2014).  And it would do so in an area that already strays beyond the Constitution's original meaning, which is disfavored. *Bucklew v. Precythe*, 587 U.S. 119, 129–35 (2019).  For another, it would create practical issues, like arbitrary opportunities to retry the mitigation phase for defendants with non-mitigation errors, but no chance to retry mitigation for defendants with equally untainted mitigation hearings.

This split is all the more cert-worthy because it implicates "the principles of comity, finality, and federalism" that underlie the limits on habeas relief in the Antiterrorism and Effective Death Penalty Act (AEDPA).  *Williams v. Taylor*, 529 U.S. 420, 436 (2000).  Because habeas relief "intrudes on state sovereignty" and "imposes special costs on our federal system," *Shinn v. Ramirez*, 596 U.S. 366, 376

(2022) (quotation omitted), the Supreme Court regularly grants petitions for certiorari relating to habeas law. *See, e.g.*, *Jones v. Hendrix*, 599 U.S. 465 (2023); *Shoop v. Twyford*, 142 S.Ct. 2037 (2022); *Dunn v. Reeves*, 141 S. Ct. 2405 (2021) (per curiam); *Alaska v. Wright*, 141 S. Ct. 1467 (2021) (per curiam); *Mays v. Hines*, 141 S. Ct. 1145 (2021) (*per curiam*); *Shinn v. Kayer*, 141 S. Ct. 517 (2020) (per curiam); *Shoop v. Hill*, 139 S. Ct. 504 (2019) (per curiam); *Sexton v. Beaudreaux*, 138 S. Ct. 2555 (2018) (per curiam); *Kernan v. Cuero*, 138 S. Ct. 4 (2017) (*per curiam*); *Dunn v. Madison*, 138 S. Ct. 9 (2017) (per curiam); *Jenkins v. Hutton*, 137 S. Ct. 1769 (2017) (per curiam); *Virginia v. LeBlanc*, 137 S. Ct. 1726 (2017) (per curiam); *Johnson v. Lee*, 578 U.S. 605 (2016) (per curiam); *Kernan v. Hinojosa*, 578 U.S. 412 (2016) (per curiam); *Woods v. Etherton*, 578 U.S. 113 (2016) (per curiam).

Consistent with the Supreme Court's active involvement in this area, this Court regularly stays the mandate in habeas cases. *See, e.g.*, Order, *Cunningham v. Shoop*, No. 20-3429 (Mar. 31, 2022) (staying mandate); Order, *Twyford v. Shoop*, No. 20-3346 (Aug. 31, 2021) (same); Order, *Issa v. Bradshaw*, No. 15-4147 (Jan. 8, 2019) (same); Order, *Hutton v. Mitchell*, No. 13-3968 (Dec. 28, 2016) (same); Order, *Barton v. Warden*, No. 12-4003 (Aug. 21, 2015) (same); Order, *Drummond v. Houk*, Nos. 11-3024, 11-3039 (Sept. 17, 2013) (same); Order, *Woodall v. Simpson*, Nos. 09-5352, 09-5406 (Oct. 30, 2012) (same); Order, *Lancaster v. Metrish*, No. 10-2112 (Sept. 12,

2012) (same); Order, *Perkins v. McQuiggin*, No. 09-1875 (May 3, 2012) (same); Order, *Mitts v. Bagley*, No. 05-4420 (Dec. 7, 2010) (same).  The Court should not depart from that pattern here.

## II.    There is good cause for a stay.

A party seeking a stay of the mandate must also demonstrate "that there is good cause for a stay."  Fed. R. App. P. 41(d)(1).  Courts consider whether the moving party will suffer harm absent a stay, *Davenport v. Maclaren*, No. 17-2267, 2020 U.S. App. LEXIS 35140, *3 (6th Cir. Nov. 5, 2020), and whether the non-moving party will suffer prejudice from a stay, *United States v. Pleau*, 680 F.3d 1, 22–23 (1st Cir. 2012) (en banc) (order of the court).

There is good cause for a stay here.  First, the State will suffer irreparable harm without a stay.  AEDPA protects a State's interest in the finality of its convictions, which writs of habeas disrupt.  *See Duncan v. Walker*, 533 U.S. 167, 178 (2001).  Before conducting yet another lengthy mitigation hearing, round of direct appeals, state-postconviction review, and federal habeas review, Ohio should have a chance to seek review in the Supreme Court.

Jackson will not be prejudiced by a brief stay of the Court's mandate.  Jackson's proceedings following his crime have stretched for over two decades.  A brief delay for Supreme Court review is marginal compared to the already protracted post-

conviction proceedings in this case. And Jackson's claims attack his sentence, not his conviction—which means he will remain incarcerated even if the Supreme Court denies review. Jackson's death sentence will, of course, not be carried out during any stay of the mandate. Because his current circumstance is unlikely to change whether he is resentenced now or after the Supreme Court accepts or declines review, Jackson will not be prejudiced by a brief delay in any resentencing.

Finally, the public interest favors a stay. Jackson plotted a murder while in prison and then violently murdered a man in his own house. *State v. Jackson*, 149 Ohio St. 3d 55, 56–57 (2016). The public has an interest in preserving his conviction and sentence. It follows that the public has an interest in making sure that Jackson's resentencing is legally justified before Ohio spends time and resources rectifying the alleged constitutional wrong.

## CONCLUSION

The Court should stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court.

Respectfully submitted,

DAVE YOST
Attorney General of Ohio

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER*
Ohio Solicitor General
 *Counsel of Record*
MICHAEL J. HENDERSHOT
Chief Deputy Solicitor General
JANA M. BOSCH
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
614-466-8980
thomas.gaiser@ohioago.gov

*Counsel for Warden*

9

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, that this motion complies with the type-volume requirements and contains 1,883 words. *See* Fed. R. App. P. 27(d)(2)(A).

I further certify that this motion complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Equity font.

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2024, this motion was filed electronically.  Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER